Judith WILSON, As Independent Executrix of the Estate of Joe Woodrow Wilson Jr., Appellant.

v.

Pamela Lynn UZZEL, Appellee.

No. 08–96–00339–CV.

Court of Appeals of Texas,
El Paso.

July 31, 1997.

Rehearing Overruled Sept. 17, 1997.

---

C. H. Hal Brockett, Jr., Midland, for Appellant.

Harper Estes, L. Shane Stokes, Lynch, Chappell & Alsup, Midland, for Appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Judith Wilson, Appellant, appeals on behalf of the estate of her deceased husband, Joe Woodrow Wilson Jr. ("Wilson"). Wilson originally filed a motion for enforcement and clarification of a 1977 decree of divorce, challenging the percentage of a defined benefit plan that had been awarded to his former wife, Appellee Pamela Lynn Uzzel ("Uzzel"). Following Wilson's death, Appellant filed a suggestion of death and proceeded in the suit as the petitioner in her role as executrix of Wilson's estate. She claimed that her husband's employer had miscalculated the benefits payable to Uzzel, and she sought a refund of the alleged overpayments.

## SUMMARY OF THE EVIDENCE

Joe Woodrow Wilson Jr. ("Wilson") began working for Southwestern Bell Telephone on February 6, 1967. He and Uzzel were married from 1967 until 1977. The divorce decree provided:

> The Court finds that for the purposes of the equitable settlement of the retirement benefits of [Wilson] with Southwestern Bell Telephone Company, that [Wilson] and [Uzzel] have been married the entire time that [Wilson] has been employed by Southwestern Bell Telephone Company and for the full length of time that he has accrued retirement benefits. The Court finds that for the purposes of calculating the retirement benefits due and payable to [Uzzel], [Wilson] and [Uzzel] have accumulated ten (10) years of community property interest towards the retirement benefits of [Wilson]. The Court finds that the ten (10) years accumulated is community property and that one-half of the ten (10) years retirement benefits ought to be paid to [Uzzel] as her interest in the community property if, as and when [Wilson] retires and receives his retirement benefits with Southwestern Bell Telephone Company, then, and in such event, [Uzzel] is to receive one-half of ten of the fraction of the number of years of service with Southwestern Bell Telephone Company until retirement. *For the purpose of this Order, the Court finds that [Uzzel] is to receive one-half of the retirement benefits by calculating her community property interest by using the ten years as the numerator over the entire number of years of service, using the entire number of years of service until retirement as the denominator.* [Emphasis added].

Wilson continued to work at Southwestern Bell until he was 48 years old, and on September 21, 1993, he retired. Wilson's actual years of service totaled 26 years, 7 months, and 15 days. At the time of divorce, Southwestern Bell offered only one pension plan, which is referred to in the record as Plan A. At the time of Wilson's retirement, however, Southwestern Bell had two plans in place, Plan A and Plan B. In order to qualify for Plan A, an employee was required to be 55 with 20 years of service, 50 years old with 25 years of service, or any age with 30 years of service. Wilson was never eligible for Plan A. He retired under Plan B, which became available to all management employees who were on the payroll as of December 30, 1991, the date the plan was implemented. Plan B allowed a management-level employee to receive five years' credit for purposes of calculating pension benefits, with credit calculated from December 31, 1991. Since Wilson retired on September 21, 1993, Plan B credited him with approximately three years of ser-

vice. The number used to calculate Wilson's pension was 29 years, 10 months, and 25 days.

A Southwestern Bell litigation support consultant testified that Plan B enhanced the incentive for management employees to retire. She explained that Southwestern Bell used the added "years" solely for the purpose of calculating Wilson's pension, and did not actually consider him to be an employee who had worked 29 years. When Wilson retired in September 1993, Southwestern Bell calculated the division of his pension on the basis of the formula spelled out in the divorce decree. Wilson's monthly benefits totaled $2,131.73. Uzzel was to receive one-half of the retirement benefits calculated by a fraction in which the ten years of marriage served as the numerator and the entire number of years of service at retirement served as the denominator. Southwestern Bell construed the phrase "entire number of years of service" as 26 years and paid Uzzel $409.95 per month based on the following formula:

$$\frac{1}{2} \times \frac{10}{26} \times \$2{,}131.73 = \$409.95$$

Wilson died on June 22, 1995. Because he had elected a single life annuity, all retirement benefits terminated at his death.

Appellant's suit, brought pursuant to former TEX.FAM.CODE ANN. § 3.72 (Vernon 1993)[1], alleged that Southwestern Bell had improperly calculated Uzzel's benefits. She advanced two alternative theories. The first urged that Uzzel should have received benefits under Plan A, which was the only plan in place at the time of divorce. Applying this theory, Uzzel should have been paid "the sum of $298.00 which is calculated based upon one-half of 10/26 under the Formula A Pension Plan based upon the actual years of service (26) of Joe Woodrow Wilson Jr." Because Southwestern Bell was paying Uzzel $409.95 instead of $298, Uzzel had allegedly received overpayments in the amount of $2,390.95.[2]

Alternatively, Appellant argued that Uzzel had been receiving Plan B benefits based upon the wrong formula: she was paid one-half of 10/26ths of the annuity ($409.95) when she should have been receiving one-half of 10/29ths of the benefit ($362.39). Applying this second theory, Uzzel had purportedly been overpaid in the sum of $998.76.

Both of these theories were predicated upon the argument that Wilson had been divested of a portion of his separate property benefits earned post-divorce in violation of *Berry v. Berry*, 647 S.W.2d 945 (Tex.1983). Appellant made no claim in the court below that the agreement incident to divorce contained terms which were ambiguous. Instead, she argued:

[Appellant] would show the Court that [Uzzel's] claim of entitlement to [Wilson's] retirement benefits constitutes a claim to property that was not a part of the community estate of [Uzzel] and [Wilson]. [Appellant] requests the Court to specify in its clarifying order the duties, obligations or acts necessary for the enforcement of the Decree and a reasonable time period within which compliance will be required.

[Appellant] would show the Court that [Uzzel] has received retirement benefits which were not part of the community estate of the marriage of [Uzzel] and [Wilson] and [Appellant] requests the Court to order [Uzzel] to reimburse the Estate of [Wilson] for all sums which have been paid to [Uzzel] that were not part of the community estate.

The trial court determined that since Wilson was not eligible for benefits under Plan A, Uzzel's benefits could not be calculated under Plan A. Further, the phrase "entire number of years of service until retirement" as used in the decree of divorce meant actual service, not credited service. Because Southwestern Bell had correctly applied the formula set forth in the decree, and because

1. Effective April 17, 1997, the Legislature recodified the Family Code by reenacting Title 1. Former Section 3.72 was reenacted as TEX.FAM. CODE ANN. § 9.008 (Vernon 1997). Acts 1997, 75th Leg., R.S., ch. 7, § 1, 1997 TEX GEN.LAWS 38.

2. The $298 figure was specifically pleaded in the second amended motion for clarification and enforcement. At trial, Appellant testified that Uzzel's share of the benefit calculated under Plan A would be $304.99. Using the latter benefit, the claimed arrearage totaled $2,204.16.

the decree "is *res judicata* to the action," Appellant's claims for relief were denied.

In a single point of error, Appellant urges that the trial court erred in adopting a construction of the divorce decree that requires an impermissible award of funds to Uzzel that were not part of the community estate. Again basing her argument on *Berry*, 647 S.W.2d at 945 and *May v. May*, 716 S.W.2d 705 (Tex.App.—Corpus Christi 1986, no writ), Appellant contends that Uzzel's participation in the enhanced portion of the retirement benefits constitutes a deprivation of Wilson's separate property. We disagree.

### Interpretation of a Consent Judgment

The divorce decree states that the parties announced to the court that they had settled their differences and had agreed to an equitable property division and reasonable child support. Divorcing couples may enter into agreements to facilitate property division. *See* Tex.Fam.Code Ann. § 3.631 (Vernon 1993). These agreements are considered contracts and their legal force and meaning are governed by contract law. *See Allen v. Allen*, 717 S.W.2d 311, 313 (Tex.1986)("A marital property agreement, although incorporated into a final divorce decree, is treated as a contract and its legal force and meaning are governed by the law of contracts . . ."); *Dechon v. Dechon*, 909 S.W.2d 950, 956 (Tex. App.—El Paso 1995, no writ). Upon approval, the court may include the agreement in the divorce decree, as in the present case. *See* Tex.Fam.Code Ann. § 3.631(b), (c). When so included, the decree becomes a consent judgment, subject to the same degree of finality and binding force as a judgment rendered in an adversary proceeding. *See McCray v. McCray*, 584 S.W.2d 279, 280–81 (Tex.1979); *Chess v. Chess*, 627 S.W.2d 513, 515 (Tex.App.—Corpus Christi 1982, no writ). Principles of collateral estoppel and res judicata therefore apply. *See Thompson v. Thompson*, 500 S.W.2d 203, 208–09 (Tex. Civ.App.—Dallas 1973, no writ).

Consent judgments are interpreted according to the law of contracts. *See Harvey v. Harvey*, 905 S.W.2d 760, 764 (Tex. App.—Austin 1995, no writ)("[W]hen a divorce decree is a consent decree or agreed

judgment, 'it must be interpreted as if it were a contract between the parties, and the interpretation thereof is governed by the laws relating to contracts.'"). When construing an agreement incident to divorce, a court must look to the intentions of the parties as they are manifested in the written agreement. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Thompson*, 500 S.W.2d at 207 (stating that the court was "bound by the express stated intent of the parties as manifested within the four corners of the instrument itself"). The entire agreement must be interpreted in such a way that all of its provisions are given effect and none is rendered meaningless. *Praeger v. Wilson*, 721 S.W.2d 597, 600–01 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). Every attempt must be made to harmonize all the provisions within the agreement, and each provision must be considered with reference to the whole agreement. Only if the agreement is ambiguous may the parol evidence be considered. *See generally Phillips v. Parrish*, 814 S.W.2d 501, 503 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Miller v. Miller*, 700 S.W.2d 941, 951 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

Ambiguity is a question of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980); *Pierce v. Pierce*, 850 S.W.2d 675, 679 (Tex.App.—El Paso 1993, writ denied). A contract is ambiguous only if there is uncertainty as to which of two meanings is correct. *Dechon*, 909 S.W.2d at 956. A party who contends that an agreement is ambiguous must prove that the agreement is uncertain, doubtful, or is susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393; *Phillips*, 814 S.W.2d at 503. If a written agreement is worded so that it can be given a certain legal meaning or interpretation, it is unambiguous. *Id., Coker*, 650 S.W.2d at 393. If the court determines that the language is ambiguous, the interpretation is a fact issue to be resolved by the finder of fact.

In the case at bar, neither party alleged that the agreement was ambiguous, and the trial court made no finding concerning ambiguity. As a result, we are called upon to first determine whether the trial court erred

in declining to clarify the decree in a fashion that would award Uzzel benefits under Plan A.

### Plan A

■ Despite the fact that Appellant testified that Wilson could have retired under Plan A, even though he would not have received benefits until age 65, the Southwestern Bell representative disagreed. Her explicit testimony was that "[h]e would not have been service pension eligible under Formula A. He would have only been service pension eligible under the [Plan B] formula." Even if Appellant is correct in her position, Wilson would never have received any benefits under Plan A due to his untimely death at the age of 50. We are not persuaded by Appellant's argument that because Plan A was the only plan in existence at the time of the divorce, Uzzel is limited to those benefits. Under the terms of the decree, Uzzel was to receive benefits "if, as and when [Wilson] retires and receives his retirement benefits." This language is significant. If Wilson had died before retirement, Uzzel would have received nothing. She was only entitled to payment "if . . . [Wilson] retires." Further, assuming Wilson retired before he was eligible to receive payments, Uzzel would not receive payment until the date "when [Wilson] . . . receives his retirement benefits." Most importantly, Uzzel was to receive benefits "as . . . [Wilson] . . . receives his retirement benefits." This language clearly provides that Uzzel is to receive no greater or lesser benefit than Wilson elected for himself, with the payment to be made in the fashion Wilson specified. Wilson elected Plan B. We find that the trial court correctly determined that the parties could not have intended the division of benefits to be calculated on the basis of a pension plan (Plan A) for which Wilson had never been eligible. Instead, Uzzel was to receive her proportionate share of the benefits Wilson actually received.

$$\frac{1}{2}^3 \quad X \quad \frac{\text{no. months married under plan}}{\text{no. months employed in plan as of date of retirement}} \quad X$$

ceived. We turn now to a calculation of the benefits under Plan B.

### Plan B

Appellant argues that the fraction utilized by Southwestern Bell should have been

$$\frac{1}{2} \quad X \quad \frac{10}{29} \quad X \quad \$2,131.73$$

rather than

$$\frac{1}{2} \quad X \quad \frac{10}{26} \quad X \quad \$2,131.73$$

The difference in the formulas reflect the three years of credited service offered under the early retirement incentive program.

■ To address this issue, we first outline a brief history of the divisibility of retirement benefits. Private retirement, annuity, and pension benefits earned by an employee spouse during marriage which are vested at the time of divorce belong to the community estate and are subject to division. *Herring v. Blakeley*, 385 S.W.2d 843, 846–47 (Tex. 1965). The same fundamental rule was applied to military retirement benefits in *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex.1970). The next issue to be addressed was whether non-vested pension benefits could be divided at divorce. In *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976), the Supreme Court approved the division of contingent interests in retirement benefits, noting that it may be necessary to make the apportionment to the non-employee spouse effective if, as, and when the benefits are received by the employee spouse. *Cearley*, 544 S.W.2d at 666. That having been established, a debate arose concerning the apportionment of benefits between the community estate and the employee spouse's separate estate when the employee spouse is employed for a period of time prior to the marriage, and remains employed throughout the marriage. The Supreme Court fashioned the apportionment formula in *Taggart v. Taggart*, 552 S.W.2d 422 (Tex. 1977):

value of benefits as of date of retirement = non-employee spouse's share

---

3. While most existing case law calculates the non-employee spouse's share at ½ or 50 percent

It is indeed the *Taggart* formula which appears in the decree of divorce now before us.

Six years later the Supreme Court issued its opinion in *Berry v. Berry,* 647 S.W.2d 945 (Tex.1983). Although the *Berry* Court expressly declined to overrule *Taggart,* it did significantly alter the denominator of the apportionment formula and the method of valuation of retirement benefits.[4]

$$\frac{1}{2} \times \frac{\text{no. months married under plan}}{\text{no. months employed in plan at divorce}} \times \text{value of benefits as of date of divorce} = \text{non-employee spouse's share}$$

---

We first note that although Appellant asks us to apply *Berry* to Wilson's benefits, her testimony was based on a mixture of *Taggart* and *Berry.* The value of the benefits as used in her hypothetical formula was the value of the benefits Wilson was actually receiving, i.e. the value of his benefits at retirement, not the value of his benefits had he been eligible to retire at the date of divorce. Further, the apportionment fraction that she utilizes employs the *Taggart* rather than the *Berry* denominator. By truly applying the *Berry* principle, the following formula would result:

$$\frac{1}{2} \times \frac{\text{no. months married under plan}}{\text{no. months employed in plan at divorce}} \times \text{value of benefits as of date of divorce} = \text{non-employee spouse's share}$$

$$\text{Or} \quad \frac{1}{2} \times \frac{120}{120}[5] \times \text{unknown benefit at divorce} = \text{Uzzel's share}$$

---

While we recognize that benefits now divided incident to divorce require compliance with *Berry,* we do not apply *Berry* retroactively. Further, because *May* involved a post-*Berry* direct appeal from a division of property upon divorce, it is similarly inapplicable. *May,* 716 S.W.2d at 705. Instead, we find *Baxter v. Ruddle* to be controlling. *Baxter v. Ruddle,* 794 S.W.2d 761 (Tex.1990). There, the parties had divorced in 1978 with a property settlement agreement which provided for Baxter to receive a percentage of Ruddle's gross benefits together with an equal proportionate share of any cost of living increases. Ruddle received a promotion post-divorce which increased his gross pay. When Baxter did not receive an increase in her benefits, she filed a motion for contempt and arrearage judgment, claiming that the language in the degree unambiguously provided for her to receive her percentage share in the post-divorce increase in benefits. In opposition to her motion, Ruddle claimed that the division of benefits in the decree violated *Berry.* The Supreme Court disagreed, noting that res judicata applies to a final divorce decree to the same extent that it applies to any other final judgment. *Baxter,* 794 S.W.2d at 762. If an appeal is not perfected, res judicata bars a subsequent collateral attack. *Id., citing Segrest v. Segrest,* 649 S.W.2d 610, 612–13 (Tex.1983), *cert. denied,* 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983). This is true even if the

of the community's interest in the benefit, the trial court has the discretion to award any percentage of the benefit in order to achieve a just and right division under Tex.Fam.Code Ann. § 7.001 (Vernon 1997). Acts 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex Gen Laws 33, eff. 4/17/97.

**4.** One reason for this change is undoubtedly due to the Court's intervening decisions in prohibiting a court from divesting a spouse of separate property upon divorce. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977)(prohibiting the divestiture of separate real property); *Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982) (prohibiting the divestiture of separate personal property).

**5.** Because *Taggart* and *Berry* both define the formula in terms of months rather than years, we translate Wilson's ten years of service into 120 months.

decree provided for an improper division of property. *Baxter*, 794 S.W.2d at 762, *citing Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987). Specifically, the Court held that *Berry* does not apply retroactively to modify a final decree, and when the parties agree to a method of apportionment, that agreement will be enforced. *Baxter*, 794 S.W.2d at 763. Baxter and Ruddle, like Wilson and Uzzel here, were entitled to make the agreement they did, "even if the trial court had been unable to order the same property division without their agreement." *Id.* Absent any contention of ambuity, res judicata operates as bar to a relitigation of the division of benefits. Indeed the trial court below specifically found that res judicata operates as a bar to Appellant's action. Accordingly, Appellant could not recover on her theory with regard to Plan B.

### *No Retroactive Relief Available Pursuant to a Clarification Order*

 We conclude that Appellant cannot recover for yet another reason. Former TEX. FAM.CODE ANN. § 3.72(c) provided as follows:

(c) A clarifying order may not be given retroactive effect. A reasonable time shall be provided for compliance before the clarifying order may be enforced by contempt or in another manner.

In the present case, all of the retirement benefits have already been awarded by Southwestern Bell; the benefits ceased when Wilson died. The question therefore arises whether a "clarification" of the 1977 decree necessary to require Uzzel to refund to Wilson's estate alleged overpayments of benefits constitutes an attempt to give retroactive effect to a clarification order. We conclude that it does.

In *Dechon*, 909 S.W.2d at 955–58, we examined the extent of a trial court's powers pursuant to a clarification order issued under former TEX.FAM.CODE ANN. § 3.72. Section 3.72(b) empowered a trial court to issue a clarifying order to effectuate the division of property in those situations where the decree was ambiguous or not sufficiently specific to

enforce by contempt. *Pearcy v. Pearcy*, 884 S.W.2d 512 (Tex.App.—San Antonio 1994, no writ). However, the order could not amend, modify, alter, or change the actual substantive division of property. *Dechon*, 909 S.W.2d at 955–56, TEX.FAM.CODE ANN. § 3.71(b).[6] This is not a case in which the requested clarification order would clarify the division of a pension in pay status that will continue to be distributed in the future. Because the benefits ceased upon Wilson's death and the redistribution of pension funds as requested by Appellant constitutes a retroactive enforcement, we conclude that the trial court could not have granted Appellant the relief she requested. Appellant's sole point of error is overruled and the judgment is affirmed.

**6.** Effective April 17, 1997, the Legislature recodified the Family Code by reenacting Title 1. Former Section 3.71 was reenacted as TEX.FAM. CODE ANN. § 9.007 (Vernon 1997). Acts 1997, 75th Leg., R.S., ch. 7, § 1, 1997 TEX GEN.LAWS 38.