Kenda Carolyn (Shanks) TREADWAY,
Appellant,

v.

George Payton SHANKS, Appellee.

No. 05–98–01228–CV.

Court of Appeals of Texas,
Dallas.

Nov. 17, 2000.

James Hunter Birch, Hughes & Luce, Dallas, W. Dane Clay, Rose Law Firm, Little Rock, AR, for appellant.

James R. Hilliard, Barbara E. Rosenberg, Law Office of Fred Misko, Jr., P.C., Susan Lea Hays, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, for appellee.

Before Justices JAMES, FITZGERALD, and FARRIS.[1]

## OPINION

DAVID F. FARRIS, J (Retired).

Kenda Carolyn Treadway appeals the entry of two Qualified Domestic Relations Orders (QDROs) issued to enforce the division of George Payton Shanks's employee retirement benefits awarded in the parties' 1981 decree of divorce. We conclude the QDROs alter the substantive division of property made in the divorce decree. Accordingly, we reverse and remand.

### Factual and Procedural Background

Treadway and Shanks were married in 1962 and divorced in 1981. After a con-

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

tested bench trial, the court entered a decree of divorce that divided the community property and retirement benefits. The divorce became final, and neither party filed an appeal.

Shanks was employed by American Airlines from 1966 until he retired in 1998. His retirement benefits included both a defined benefit plan and a defined contribution plan. In March 1998, several months before his retirement, Shanks filed a motion requesting the court to sign a proposed QDRO to direct the disbursement of his retirement benefits. Treadway filed her response, requesting the court to sign her proposed QDRO. In May 1998, the court entered two QDROs, one order proposed by Shanks relating only to the defined benefit plan and the other QDRO, Treadway's proposed order encompassing both retirement plans. Treadway filed a notice of appeal of the QDRO related to the defined benefit plan. Shanks filed a motion for the trial court to vacate and reconsider the other QDRO and a request that the court sign a separate QDRO for the defined contribution plan. Treadway's appeal of the defined benefit plan QDRO was transferred to the Texarkana Court of Appeals.[2]

In June 1998, the court granted Shanks's motion to reconsider, vacated the QDRO that referred to both retirement plans, entered Shanks's QDRO for the defined contribution plan, and reconfirmed the QDRO for the defined benefit plan. Treadway filed this appeal complaining of both QDROs. The Texarkana Court of Appeals dismissed Treadway's prior appeal of the defined benefit plan QDRO, concluding the reconfirmation of that QDRO in June 1998 restarted the appel-

late timetable and deprived that court of jurisdiction.[3]

## Jurisdiction

■ We must first consider Shanks's cross-issue, alleging this Court has no jurisdiction to consider the appeal of the defined benefit plan QDRO. Shanks argues that his motion to vacate and reconsider did not relate to the defined benefit plan QDRO and, therefore, the May 1, 1998 defined benefit plan QDRO was a final order. According to Shanks, the June 17, 1998 order reconfirming the defined benefit plan QDRO was entered after the trial court lost plenary jurisdiction to affect that QDRO, and, contrary to the finding of the Texarkana Court of Appeals, the appellate timetable for that order was not restarted.

■ Shanks further argues that, because Treadway did not challenge the Texarkana Court of Appeals' dismissal, she should not be allowed to proceed with the appeal of the defined benefit plan QDRO. However, the law of the case doctrine provides that the final ruling of an appellate court on a question of law in a case will govern throughout the subsequent proceedings of the same case. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986); *City of Dallas v. Cornerstone Bank, N.A.*, 879 S.W.2d 264, 268 (Tex.App.-Dallas 1994, no writ). Under the law of the case doctrine, we must abide by the Texarkana Court of Appeals' determination concerning the effect of the June 1998 reconfirmation order. Therefore, we conclude that we have jurisdiction to consider the merits of the appeal related to both QDROs.

■ Moreover, Shanks's motion to reconsider requested Treadway's QDRO be

---

**2.** This case was transferred pursuant to an order of the Texas Supreme Court to equalize the dockets of the various courts of appeals.

**3.** *Shanks v. Shanks*, No. 06-98-00078-CV (Texarkana, Sept. 24, 1998, no pet.) (not designated for publication).

vacated. Because Treadway's QDRO included provisions for both the defined benefit and defined contribution plans, Shanks's motion to vacate Treadway's QDRO constituted a motion to modify, correct, or reform the judgment of the court that extended the plenary power of the court over both QDROs. *See* TEX.R. CIV. P. 329b(g). By vacating Treadway's QDRO and re-adopting the defined benefit plan QDRO as the order of the court, the June 1998 order altered and/or clarified Treadway's rights under the defined benefit plan. Thus, the June 17, 1998 order operated as an order modifying, correcting, or reforming the original judgment, and it automatically restarted the appellate timetable anew from its date. *See* TEX.R. CIV. P. 329b(h); *see also Lane Bank Equip. Co. v. Smith S. Equip., Inc.,* 10 S.W.3d 308, 313 (Tex.2000) (if a judgment is modified, corrected or reformed in any respect, the appellate timetable runs from the date of the new judgment). Shanks's cross-issue is overruled.

### Standard of Review

■ Because the trial court did not make findings of fact or conclusions of law, we must assume that it made all findings in support of its judgment. *Pharo v. Chambers County, Tex.,* 922 S.W.2d 945, 948 (Tex.1996); *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989) (per curiam). Furthermore, when findings of facts and conclusions of law are not requested or filed, we must affirm the judgment of the trial court on any legal theory that finds support in the evidence. *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984). A conclusion of law can be attacked on the ground that the trial court did not properly apply the law to the facts. *See Foster v. Foster,* 884 S.W.2d 497, 500 (Tex.App.-Dallas 1993, no writ). We review the trial court's conclusions of law de novo. *In re Humphreys,* 880 S.W.2d 402, 404 (Tex.1994);

*Gone v. Gone,* 993 S.W.2d 845, 848 (Tex. App.-Houston [14th Dist.] 1999, pet. denied).

### The Divorce Decree

■ The parties agree that the trial court had no authority to alter the substantive property division contained in their 1981 decree of divorce. *See* TEX. FAM.CODE ANN. § 9.007 (Vernon 1998); *Milligan v. Niebuhr,* 990 S.W.2d 823, 827 (Tex.App.—Austin 1999, no pet.). If an appeal is not timely perfected from the divorce decree, res judicata bars a subsequent collateral attack. *See Baxter v. Ruddle,* 794 S.W.2d 761, 762 (Tex.1990).

■ The QDROs in this case grant Treadway twenty-five percent of the retirement benefits that accrued or were attributable to Shanks's employment before the date of divorce. Treadway contends the divorce decree granted her twenty-five percent of all of Shanks's retirement benefit, including that which accrued after the parties divorced. The relevant portion of the divorce decree provides:

> The Court finds that Respondent has earned certain employee benefits under a pension plan arising out of past employment as an employee of American Airlines.

> Petitioner is awarded a "pro-rata interest" (as hereinafter defined) of any and all sums received or paid to Respondent from such pension plan and such sum or sums shall be payable to Petitioner if, as and when paid by American Airlines or the trustee of such plan to Respondent as pension or retirement employee benefits existing because of Respondent's employment.

> IT IS DECREED that Petitioner's "pro-rata interest" shall be defined as that sum of money equal to 25% of the total sum or sums paid or to be paid to

Respondent from such pension or retirement plan.

This case involves the interpretation of this provision. The same rules of interpretation apply in ascertaining the meaning of judgments as in ascertaining the meaning of other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex.1971); *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 546 (Tex.App.-Dallas 1990, writ denied). Whether a written instrument is ambiguous is a question of law. *See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then there is no ambiguity, and the construction of the written instrument is a question of law for the court. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Sears, Roebuck & Co. v. Commercial Union Ins. Corp.*, 982 S.W.2d 151, 154 (Tex.App.-Houston [1st Dist.] 1998, no pet.). A document is ambiguous only when the application of pertinent rules of interpretation results in genuine uncertainty as to which one of two or more meanings is proper. *Universal C.I.T. Credit Corp. v. Daniel* 150 Tex. 513, 517, 243 S.W.2d 154, 157 (1951); *State Farm Lloyds, Inc.*, 791 S.W.2d at 545.

If the decree taken as a whole is unambiguous, the trial court is required to declare the effect of the decree in light of the literal meaning of the language used. *Wilde v. Murchie*, 949 S.W.2d 331, 332–33 (Tex.1997) (per curiam); *Acosta v. Acosta*, 836 S.W.2d 652, 654 (Tex.App.-El Paso 1992, writ denied). Where the language is plain, it must be enforced as written. *Republic Nat'l Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963). If the literal language of the decree is susceptible to more than one interpretation, we apply pertinent rules of construction to

determine whether there continues to exist genuine uncertainty as to which meaning is proper. *State Farm Lloyds, Inc.*, 791 S.W.2d at 546. Mere disagreement over the meaning of a provision in a contract does not make it ambiguous. *County of Maverick v. Texas Ass'n of Counties Worker's Comp. Self–Ins. Fund*, 852 S.W.2d 700, 705 (Tex.App.-San Antonio 1993, no writ). Neither conflicting interpretations nor conflicting expectations are sufficient to create an ambiguity. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994).

In contrast, if the decree is ambiguous, the court must interpret it by reviewing both the decree as a whole and the record to ascertain the property's disposition. *Wilde*, 949 S.W.2d at 332–33; *State Farm Lloyds, Inc.*, 791 S.W.2d at 546. If a judgment is ambiguous, the ambiguity must be resolved, if possible, considering the entire content of the judgment and the record. *Lone Star Cement Corp.*, 467 S.W.2d at 405.

In her third issue, Treadway contends the language of the decree unambiguously awarded her twenty-five percent of Shanks's total retirement benefit. She relies on the decree provision that she was awarded a pro-rata interest of "any and all sums received or paid to Respondent . . . payable . . . if, as and when paid" to Shanks, and that the term "pro-rata interest" is defined as "25% of the total sum or sums paid or to be paid to Respondent." Although Shanks agrees the decree is unambiguous, he contends the QDROs are correct because the divorce decree specifically refers to a "pension plan arising out of past employment." He argues that Treadway's interest in "such pension plan" relates only to the pension plan that existed by virtue of the past employment.

■ Judgments, like other written instruments, are to be construed as a whole toward the end of harmonizing and giving effect to all the court has written. *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex.1976). However, even when we consider the court's recital that Shanks had earned "certain employee benefits under a pension plan arising out of past employment," we note that the decree awards Treadway an interest in "such pension plan," rather than an interest in "such benefits" accrued under the pension plan. There is no dispute that the QDROs at issue are for the same American Airlines, Inc. pension plans that existed at the time of divorce.[4] The decree awards Treadway a twenty-five percent interest of the *"total sum or sums paid or to be paid"* from those pension plans and does not limit her award to a percentage of the benefits accrued in the plans prior to the divorce. We conclude that the decree unambiguously awards Treadway an interest in Shanks's total retirement account. Our conclusion is also supported by the decree's specification that benefits were awarded "if, as and when paid" to Shanks. The term "if, as, and when received" is a term of art evidencing an intent to value a pension plan at the time of receipt rather than at the time of divorce. *See Hurley v. Hurley*, 960 S.W.2d 287, 289 (Tex.App.-Houston [1st Dist.] 1997, no pet.); *Wilson*

*v. Uzzel*, 953 S.W.2d 384, 391 (Tex.App.-El Paso 1997, no pet.).[5]

■ Shanks argues that if the language of the judgment is susceptible to more than one interpretation, we should adopt the one that harmonizes it with the facts and the law of the case. *See State Farm Lloyds, Inc.*, 791 S.W.2d at 546. In this regard, Shanks argues that the law in 1981 did not approve a division of total retirement without regard to when it was earned. *See, e.g., Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139, 143 (Tex.1977); *Taggart v. Taggart*, 552 S.W.2d 422, 424 (1977). Shanks's argument fails for several reasons. First, we do not apply rules of construction where the literal meaning of the language used in the decree is only susceptible to one reasonable interpretation. *See Wilde*, 949 S.W.2d at 332–33. Where the language is plain, it must be enforced as written. *Republic Nat'l Life Ins. Co.*, 368 S.W.2d at 94.

■ Second, the law related to the division of retirement benefits went through several changes during the period immediately preceding this divorce. *See Baxter*, 794 S.W.2d at 763 (analyzing cases where trial courts erroneously divided retirement benefits prior to *Berry v. Berry*, 647 S.W.2d 945 (Tex.1983)). In *Cearley v. Cearley*, 544 S.W.2d 661, 664–66 (Tex.

4. Shanks's argument might apply if the QDROs were for a new or different pension plan. The literal language of the decree refers to the pension plan *that existed* at the time of divorce, but not the pension plan *as it existed* at the time of divorce.

5. Shanks argues that *Hurley* and *Wilson* are distinguishable because the judgments in those cases were agreed judgments and explicitly calculated the community portion of defined benefit retirement plans using the *Taggart* formula. *See Taggart*, 552 S.W.2d at 424. While the term "if, as, and when received" is normally used in connection with

such a calculation, the analysis and interpretation of this phrase as a term of art in *Hurley* and *Wilson* did not depend upon the use of the *Taggart* formula. *See Hurley*, 960 S.W.2d at 287; *Wilson*, 953 S.W.2d at 389. We further do not consider *Hurley* and *Wilson* to be distinguishable because they involved agreed judgments. An agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding. *See McCray v. McCray*, 584 S.W.2d 279, 281 (Tex.1979); *Haworth v. Haworth*, 795 S.W.2d 296, 298 (Tex.App. Houston [14th Dist.] 1990, no writ).

1976), the Supreme Court specifically approved of awarding a contingent interest in retirement benefits to be paid "if, when, and as" the benefits were paid to the husband, because of the uncertainties affecting the accrual and maturity of such benefits, as well as the difficulty of determining the value of defined benefit plans. In 1983, the supreme court made it clear that retirement benefits accruing as compensation for services rendered after a divorce are not part of the community estate subject to division on divorce. *See Berry,* 647 S.W.2d at 947. But this case was decided in 1981, and *Berry* cannot be applied retroactively to modify a final decree. *See Baxter,* 794 S.W.2d at 763.

Third, and most importantly, the doctrine of res judicata requires us to uphold the decree even if the divorce decree improperly divided the property and did not comply with the substantive law in effect when the decree was rendered. *See id.* at 762; *Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987). Although a final judgment may be erroneous or voidable, it is not void and thus subject to collateral attack if the court had jurisdiction of the parties and the subject matter. *Berry v. Berry,* 786 S.W.2d 672, 673 (Tex.1990); *Lawrence,* 911 S.W.2d at 452 n. 1. Even the trial court's erroneous awarding of a husband's separate property to his wife does not render the judgment void. *Lawrence,* 911 S.W.2d at 452 n. 1; *Williams v. Williams,* 620 S.W.2d 748, 749 (Tex.Civ. App.-Dallas 1981, writ ref'd n.r.e.). If the trial court erred, the error was one of substantive law to be remedied by appeal. *Lawrence,* 911 S.W.2d at 452 n. 1; *Stinson v. Stinson,* 668 S.W.2d 840, 841 (Tex.App.- San Antonio 1984, writ ref'd n.r.e.). There was no appeal of the divorce decree. Consequently, the prior judgment is not subject to collateral attack in this suit.

Because we conclude that the decree is unambiguous and, as worded, awards Treadway twenty-five percent of Shanks's total retirement benefit, we sustain Treadway's third issue. We therefore further conclude that the QDROs entered by the court alter the substantive division of property made in the divorce decree. *See* TEX. FAM.CODE ANN. § 9.007 (Vernon 1998). Accordingly, we sustain Treadway's first issue. Because we conclude the decree is unambiguous, it is unnecessary for us to address Treadway's second issue. *See* TEX.R.APP. P. 47.1. We reverse the judgments of the trial court and remand for the court to enter revised QDROs that conform with this opinion.