Affirmed in Part, Reversed and Remanded in
Part, and Opinion filed June 30, 2011.

 

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00577-CV



Kyle Edward
Hicks, Appellant 

v.

La’Kesha Marie Haynes
Hicks, Appellee 



On Appeal from
the 245th District Court

Harris County, Texas

Trial Court
Cause No. 2009-73495



 

OPINION 

In this divorce case, Kyle Edward Hicks (“Husband”)
complains of errors in a domestic relations order and in the final decree of divorce. 
He also contends that the trial court abused its discretion by awarding
appellee, La’Kesha Marie Haynes Hicks (“Wife”), attorney’s fees and expenses in
the order denying Husband’s motion to correct or reform the judgment.  We affirm
the final decree of divorce and the award of attorney’s fees and expenses.  We
reverse and remand the domestic relations order for further proceedings
consistent with this opinion.

 

I.                  
Background

In November 2009, Wife filed an original petition for
divorce.  In December 2009, Husband filed an original answer and an original
counter-petition for divorce.  In January 2010, the parties entered into an
informal settlement agreement pursuant to section 6.604 of the Texas Family
Code.  In March 2010, the trial court signed the final decree of divorce, which
was approved and consented to as to both form and substance by Husband and
Wife, after Husband filed a motion for the trial court to do so.  On the same
day, the trial court signed the domestic relations order (“DRO”) at issue,
approved by only Wife and her attorney.  References to the DRO are crossed out
in the final decree of divorce.  One deleted reference in the final decree under
“Property to Husband” is initialed by “CB” and “LH,” presumably Wife and her
attorney; another deleted reference under “Property to Wife” is initialed by
“CB” only.  

In April 2010, Husband filed a motion to correct or
reform the judgment, complaining about errors in both the final decree of
divorce and the DRO.  Husband also requested sanctions against Wife, her
attorney, and/or their expert for allegedly misrepresenting the applicable
federal law to the court, and Husband requested trial and appellate attorney’s
fees, expenses, and costs.  Wife filed a response to the motion to correct or
reform the judgment, stating that the motion was groundless and brought solely
for the purpose of harassment.  In addition, she requested trial and appellate
attorney’s fees, expenses, and costs.  Wife filed a separate motion for
sanctions pursuant to Rule 13 of the Texas Rules of Civil Procedure, claiming
that Husband’s motion to correct or reform the judgment was groundless and
brought for the purpose of harassment.  She requested as sanctions (1) that the
trial court deny the motion to correct or reform the judgment and (2) that she
be awarded attorney’s fees and expenses incurred in obtaining an order for
sanctions.    

The trial court held a hearing on Husband’s motion to
correct or reform the judgment and on Wife’s request for attorney’s fees in her
response.[1] 
The trial court denied Husband’s motion and ordered Husband to pay Wife’s
attorney’s fees and expenses in the amount of $1,950.00.  After the hearing, with
the trial court’s permission, Husband’s trial counsel introduced expert
testimony regarding the calculation of and the community interest in his
military retirement pay.[2] 
This appeal followed.  

II.              
Analysis

A.   
 Domestic Relations
Order

In his first issue, Husband contends that the trial
court erred in signing the DRO because the DRO contains a formula incorrectly
calculating (1) the community interest in his military retirement pay and (2)
the retirement pay itself.  In addition, Husband claims that the DRO designates
Wife as the former spouse beneficiary of his Survivor Benefit Plan when no such
designation was made in the final decree of divorce.

The parties entered into an agreed final decree of
divorce.  For a consent judgment to be valid, each party must explicitly and
unmistakably give his or her consent.  In re Broussard, 112 S.W.3d 827,
832–33 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).  Approval as to
form and substance, standing alone, does not transform a judgment into a
consent judgment.  Id.  The body of the judgment must suggest, for
example, that the judgment was rendered by consent.  Chang v. Linh Nguyen,
81 S.W.3d 314, 316 n.1 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Husband and Wife attested by their signatures that they
approved and consented to the divorce decree as to both form and substance.  In
the body of the decree, the trial court found that the parties had entered into
a written agreement, the written agreement being the Final Decree of Divorce. 
The parties stipulated that the agreement was enforceable as a contract to the
extent permitted by law.  Because the parties entered into an agreed divorce
decree, it is treated as a contract between the parties with the law of
contracts governing the interpretation of the decree’s legal force and
meaning.  See Pate v. Pate, 874 S.W.2d 186, 188 (Tex. App.—Houston [14th
Dist.] 1994, writ denied).

The DRO in this case was signed on the same day as
the agreed final decree of divorce.  When the signing of the DRO occurs contemporaneously
with the signing of the divorce decree, courts have construed the DRO as part
of the divorce decree.  See, e.g., Gillin v. Gillin, 307 S.W.3d 395, 396
(Tex. App.—San Antonio 2009, no pet.) (characterizing complaints about two
provisions of an incorporated DRO as being an appeal from a divorce decree); Beyer v. Beyer, No. 03-06-00803-CV, 2009 WL
2341857, at * 1 (Tex. App.—Austin July 28, 2009, pet. denied) (mem. op.)
(appeal from domestic relations order portion of decree).  While the DRO in
this case was signed on the same day as the final decree of divorce, references
to the DRO are expressly deleted from the agreed decree.  The trial court
approved the agreement of the parties “as contained in this Final Decree of
Divorce.”  As such, we will review the DRO as a separate order and not as part
of the agreed divorce decree.[3] 


Initially, we reject Wife’s contention that Husband
failed to preserve error on his issue.  To preserve a complaint of error in a
judgment, a party must inform the trial court of its objection by a timely
filed motion to amend or correct the judgment, a motion for new trial, or some
other similar method, and the trial court must rule on the motion either
expressly or implicitly.  See Tex. R. App. P. 33.1(a).  Husband properly
preserved error with his timely filed motion to correct or reform the judgment complaining
of the incorrect calculations in the DRO and Wife’s beneficiary status.  The
motion was denied by written order.

Because the trial court did not make findings of fact
or conclusions of law, we assume that it made all findings in support of its
judgment.  Pharo v. Chambers Cnty., 922 S.W.2d 945, 948 (Tex. 1996). 
Furthermore, when findings of fact and conclusions of law are not filed, we
must affirm the trial court’s judgment on any legal theory that finds support
in the evidence.  In re W.E.R., 669 S.W.2d 716, 717 (Tex. 1984) (per
curiam).  A conclusion of law can be challenged on the ground that the trial
court did not properly apply the law to the facts.  Treadway v. Shanks,
110 S.W.3d 1, 5 (Tex. App.—Dallas 2000), aff’d, 110 S.W.3d 444 (Tex.
2003).  We review questions of law de novo.  In re Humphreys, 880 S.W.2d
402, 404 (Tex. 1994).

Calculation of Community Interest in Retirement Pay

The final decree of divorce awards to Wife as her
sole and separate property “[a] 50% portion of the community sums, whether
matured or unmatured, accrued or unaccrued, vested or otherwise, together with
all increases thereof, the proceeds therefrom, and any other rights related to
or as a result of Kyle Edward Hicks’ service in the United States Air Force,
including any accrued unpaid bonuses, disability plan or benefits, or other
benefits existing by reason of or as a result of Kyle Edward Hicks’ past or present
employment.”  Therefore, the decree awards Wife a 50 percent portion of the community
sums existing by reason of or as a result of Husband’s past or present
employment, including any accrued unpaid bonuses, disability plan or benefits,
or other benefits.  This award is consistent with the parties’ informal
settlement agreement which states:  “Wife shall be awarded 50% of the community
interest in husband’s defined military retirement pay.”

Under the Uniformed Services Former Spouses’
Protection Act (“USFSPA”), a divorce court may treat disposable retired pay
payable to a member for pay periods beginning after June 25, 1981 as marital
property subject to division in accordance with the law of the jurisdiction.  See
10 U.S.C.A. § 1408(c) (West 2010).  The purpose of the DRO in this case is to
direct a military service, rather than a civil pension plan administrator, to
make payments out of Husband’s disposable retired pay to Wife.  See id.
§ 14.08(d)(1).[4] 
This particular DRO sets out the following formula as a calculation of the sums
owed to Wife: 

Former Spouse shall receive [50 percent] of Member’s
Disposable Retired Pay (DRP), if, as and when received, multiplied by the
following formula:  

Number of months Member and Former Spouse were married during
which Member was in service (183 mos.) divided by Number of months Member was
in service as of retirement (not greater than 480 months) 

X

Active duty base pay for an 0-6 with 26+ years of
creditable service as of 01/01/2010 ($10,047.00 per month) divided by Active
duty base pay of Member as of his date of retirement

Husband contends, and we
agree, that the DRO does not calculate the community sums owed to Wife in
accordance with Texas law.  The DRO purports to use the fraction formula
established in Taggart v. Taggart, 552 S.W.2d 422 (Tex. 1977), by
dividing the number of months married during Husband’s service by the total
number of months Husband will be in service as of retirement.  However, the Taggart
fraction no longer applies to situations such as this one.

In Taggart, the Supreme Court of Texas developed
a formula for determining the extent of the community’s interest in a military retirement
plan.  552 S.W.2d at 423–24 (holding that divorced spouse “owned as her part of
the community estate a share in the contingent right to military benefits even
though that right had not matured at the time of the divorce”).  The Court used
the following fraction when calculating the non-employee spouse’s one-half
interest in the employee-spouse’s retirement pay:  the number of months the
parties were married during the employee spouse’s employment divided by the
total number of months of service that entitled the employee spouse to the
retirement benefits.[5] 
Id. at 424.  

In Berry v. Berry, the Court altered the Taggart
formula.  647 S.W.2d 945, 946–47 (Tex. 1983).  The Court did so by changing the
fraction denominator to the number of months employed under the plan at the
time of divorce.  Id.  (emphasis added); see also Shanks, 110
S.W.3d at 447 n.3 (Tex. 2003) (recognizing that the formula was altered).  Berry
also altered the valuation portion of the formula, requiring the value of the
benefits to be calculated at the date of divorce.  Shanks, 110 S.W.3d at
447 n.3.  Thus, the Berry formula prevents a divorce court from awarding
to the non-employee spouse any portion of a post-divorce increase in retirement
benefits that would invade the employee spouse’s separate property, such as
post-divorce raises, promotions, services rendered, or contributions.  See Berry,
647 S.W.2d at 947 (holding post-divorce increases attributable to pay raises
and union-contract negotiations for an improved benefit plan are not part of
the parties’ estate subject to division on divorce); Stavinoha v. Stavinoha,
126 S.W.3d 604, 610 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing Berry). 
However, a divorce court may award the non-employee spouse her share of any
post-divorce cost-of-living increase in the retirement benefit.  Limbaugh v.
Limbaugh, 71 S.W.3d 1, 16 n.12 (Tex. App.—Waco 2002, no pet.).  

Here, Husband was not retired as of the date of
divorce.  The DRO states that: “Member was on active duty with the U.S. Air
Force at the time this Order was entered.”  The fraction used to calculate
Wife’s community interest in Husband’s retired pay should follow the Berry formula. 
Therefore, the applicable fraction is the number of months Husband and Wife
were married during Husband’s employment under the retirement plan divided by
the number of months Husband was employed under the retirement plan at the time
of divorce.  We sustain the portion of Husband’s first issue dealing with the
calculation of the community interest in retired pay found in the DRO.  We
reverse and remand for the trial court to adjust the formula in the DRO to be
consistent with Texas law.  

Calculation of Retirement Pay 

Husband also contends that the formula does not
accurately calculate the retired pay itself.  The DRO uses the following
fraction to calculate Husband’s retired pay:  Active duty base pay for an 0-6
with 26+ years of creditable service as of 01/01/2010 ($10,047.00 per month)
divided by Husband’s active duty base pay as of his date of retirement. 
Husband argues that both the numerator and denominator of this fraction are
incorrect.  

The computation of retired pay involves factors such
as:  (1) the percentage of pay base that a service member accrues toward
retirement for every creditable complete year and month of service; (2) the service
member’s pay grade; and (3) the service member’s pay base at the service
member’s pay grade and longevity at the time of the divorce or at the time of
retirement, whichever is applicable.  See Caracciolo v. Caracciolo,
251 S.W.3d 568, 572 (Tex. App.—San Antonio 2007, no pet.).  Computation of
retired pay for members of the armed forces is found in chapter 71 of title 10
of the United States Code.  See 10 U.S.C.A. §§ 1401 (computation of
retired pay), 1405 (years of service), 1406 (retired pay base for members who
first became members before September 8, 1980: final basic pay), 1407 (retired
pay base for members who first became members after September 7, 1980: high-36
month average), 1409 (retired pay multiplier); see also id. §
8991 (computation of retired pay for member of the Air Force).   

Husband claims that his retired pay base should be
calculated using section 1407 rather than section 1406 of the United States
Code because he first became a member of a uniformed service after September 7,
1980.  The DRO appears to calculate Husband’s retired pay base under section
1406 (retired pay base for members who first became members before September 8,
1980) because the fraction’s numerator uses Husband’s monthly basic pay at
Husband’s pay grade.  See id. § 1406.  Under section 1407, the
high-36 month average is used to calculate the retired pay base for those who
first became members of a uniformed service after September 7, 1980.[6]  Id.
§ 1407.  “High-36 month average” means “the total amount of monthly basic pay
to which the member was entitled for the 36 months (whether or not consecutive)
out of all the months of active service of the member for which the monthly
basic pay to which the member was entitled was the highest, divided by 36.”  Id.
§ 1407(c).  Therefore, evidence of when Husband began uniformed service is
essential to Husband’s argument that the “high 36” formula should be used to
calculate his retired pay base.  The existing formula in the DRO references
“26+ years of creditable service as of 01/01/2010.”  This reference indicates
that Husband had 26 years and some months of creditable service in the military
as of 01/01/2010.[7] 
Based on the reference in the DRO to “26+ years of creditable service as of
01/01/2010,” Husband must have begun military service after September 7, 1980,
and, therefore, the high-36 month average will be used to calculate his retired
pay base.  See id. § 1407.  

Husband further argues that for purposes of division
of his military retirement benefits upon divorce, the high-36 month average
should be calculated as of the date of divorce, rather than the date of
retirement.  We agree.  See Grier v. Grier, 731 S.W.2d 931, 932
(Tex. 1987) (holding that “in apportioning military retirement benefits upon
the dissolution of a marriage, the valuation of the community’s interest in
such benefits is to be based on the retirement pay which corresponds to the
rank actually held by the service spouse on the date of the divorce”); Caracciolo,
251 S.W.3d at 572 (husband testified that “high 36” plan was only retirement
option and calculated “high 36” based on average base pay during 36 months
preceding divorce).

Husband also contends that the denominator of this
fraction (bottom fraction above) should be Husband’s “gross retired pay on the
date of his retirement” rather than “active duty base pay of Member as of his
date of retirement.”  We agree that Wife is entitled to a percentage of
Husband’s disposable retired pay. 

Therefore, we sustain the portion of Husband’s first
issue dealing with the calculation of the retired pay itself found in the DRO. 
We reverse and remand for the trial court to adjust the formula in the DRO to
be consistent with federal and state law.    

Wife’s Beneficiary Status

Finally, Husband argues that the DRO is inconsistent with the agreed divorce
decree in that the DRO provides that “[f]ormer Spouse shall be deemed to be the
beneficiary of the Survivor Benefit Plan (“SBP”) annuity through Member’s
military retirement and Member shall execute any documents as are required to
make the designation of Former Spouse as said beneficiary.”  The agreed divorce
decree does not specifically divide the SBP annuity or mention Wife’s status as
a former spouse beneficiary to the SBP annuity.[8]   

Under federal law, a member of the armed forces (1) who is entitled to
retired pay or (2) who would be eligible for reserve-component retired pay except
for the fact that he is under 60 years old is eligible to participate in the
SBP.  10 U.S.C.A. § 1448(a)(1)(A)–(B).  The SBP applies to eligible service
members who are married or have a dependent child when they become entitled to
retired pay or eligible for reserve-component retired pay.  Id. §
1448(a)(2)(A)–(B).  The eligible service member may elect to provide an annuity
to a former spouse payable upon the member’s death.  Id. §§ 1448(b)(2)–(3),
1450.  Assuming that the statute applies to Husband,[9] he must, at the time of
making the election, provide “the Secretary concerned with a written statement”
setting forth whether the election is being made pursuant to court order or
pursuant to a voluntary written agreement as part of, or incident to, a divorce
proceeding and, if so, whether the voluntary written agreement has been
incorporated in, or ratified or approved by, a court order.  Id. §
1448(b)(5).  A court order means “a court’s final decree of divorce,
dissolution, or annulment or a court ordered, ratified, or approved property
settlement incident to such a decree . . . .”  Id. § 1447(13). 

Here, the agreed divorce decree does not require Husband to name Wife as
a former spouse beneficiary to an SBP annuity.[10]  Because the DRO is not
part of the parties’ agreement and it imposes an additional obligation not
included in the agreed divorce decree, the trial court erred by including this
obligation in the DRO.  We sustain this portion of Husband’s first issue.  We
reverse and remand for the trial court to remove the reference to Wife’s status
as former spouse beneficiary of Husband’s SBP in the DRO.  

To summarize, we reverse the DRO for the reasons
stated and remand to the trial court for further proceedings.  Because of our
disposition of this issue, we need not address Husband’s contention that the
trial court abused its discretion by excluding Husband’s expert testimony at
the hearing on the motion to correct or reform the judgment.  See Tex.
R. App. P. 47.1.

B.  Final
Decree of Divorce

In his second issue, Husband contends that the trial
court erred by allowing reference to the DRO to be stricken from the divorce
decree.  

A party cannot appeal from a judgment to which he has
consented or agreed unless there is an allegation and proof of fraud,
collusion, or misrepresentation.  Boufaissal v. Boufaissal, 251 S.W.3d
160, 161–62 (Tex. App.—Dallas 2008, no pet.).  Husband attested by his
signature that he approved and consented to the divorce decree as to both form
and substance.  In the body of the decree, the trial court found that the
parties had entered into a written agreement as contained in the decree and, to
the extent permitted by law, the parties stipulated that the agreement was
enforceable as a contract.  Despite this fact, Husband argues that he did not
agree to the deletion of the language “as awarded in a Domestic Relations
Order” in section W-6 of the decree because his attorney did not initial this
deletion.  This argument is without merit.  Although it is true that only
Wife’s attorney’s initials are listed next to the deletion in section W-6, the
same deleted reference appears in the corresponding H-6; Husband does not complain
about the same deletion here even though only Wife’s initials and her
attorney’s initials appear next to it.[11]


Because Husband consented to the decree and has not
made an allegation of fraud, collusion, or misrepresentation, we overrule
Husband’s second issue.  

 

 

C.   
Attorney’s Fees

In his third issue, Husband argues that the trial
court abused its discretion by awarding sanctions against him for filing a
motion to correct or reform the judgment.  

            In her response
to the motion to correct or reform the judgment, Wife contends that the motion
is groundless and brought for the purpose of harassment.  Wife requests
reasonable attorney’s fees, expenses, and costs through trial and appeal or, in
the alternative, reasonable attorney’s fees, expenses, and costs through trial
and appeal taxed as costs.  Wife filed a separate motion for sanctions pursuant
to Texas Rule of Civil Procedure 13 in which she contends that the motion to correct
or reform judgment is groundless and brought for the purpose of harassment. 
Wife requests reasonable expenses, including reasonable attorney’s fees,
incurred in obtaining an order for sanctions.  At the hearing on the motion to
correct or reform judgment, Wife agreed to pass on her motion for sanctions and
proceed with the attorney’s fees requested in her response to Husband’s motion. 
The trial court awarded Wife her attorney’s fees in the amount of $1,500 and
expenses in the amount of $450 for a total amount of $1,950.

            Husband’s only
contention on appeal is that the trial court erred in awarding attorney’s fees
as sanctions.  However, the trial court’s order does not state that it is
awarding the attorney’s fees as sanctions.  Likewise, the exchange between the
trial court and the attorneys at the hearing on the motion to correct or reform
the judgment indicates that the attorney’s fees were not awarded as sanctions.

THE COURT:  We’re dealing with a motion and your response.

WIFE’S COUNSEL:  That would be my —

THE COURT:  Let me see yours.  She’s asking for attorney
fees, expenses and costs.  You want to respond to that, her response, since
we’re not going forward on her sanctions, she’s going on the response.

HUSBAND’S COUNSEL:  Well, Your Honor, the only —

THE COURT:  Do you want to cross-examine her on anything?

HUSBAND’S COUNSEL:  No, Your Honor, I got notice of 1500.

THE COURT:  That’s in her sanctions, Counsel.

HUSBAND’S COUNSEL:  That’s in her sanctions motion.

THE COURT:  And that’s not before the Court, she’s not
going on that.  She’s going on her response to your motion to correct or
reform.

HUSBAND’S COUNSEL:  Okay.  So these—these are not going to
be sanctions, they’re going to be attorney’s fees for what purpose?

WIFE’S COUNSEL:  I’ll dismiss my motion for sanctions if
you award the fees today.  Obviously, it’s not necessary to do that.  It’s not
set until sometime in July anyway.       

Husband’s only argument on appeal is that the trial
court erred in awarding Wife’s attorney’s fees and expenses as sanctions. 
Because the record does not reflect his interpretation of the proceedings, his argument
is without merit.

Therefore, we overrule Husband’s third issue.

III.           
Conclusion

We affirm the final decree of divorce and the award
of attorney’s fees and expenses in the order denying the motion to correct or
reform judgment.  We reverse and remand the domestic relations order for
further proceedings consistent with this opinion.

 

 








                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Seymore and Boyce.

 









[1]
At the hearing, Wife’s trial counsel stated that
she would dismiss her motion for sanctions if the trial court awarded the
attorney’s fees requested in her response, which the trial court did.





[2]
According to Husband’s brief, this was done outside the presence of the trial
judge.





[3]
Post-divorce DROs, for example, are appealable orders.  See Shanks v.
Treadway, 110 S.W.3d 444, 446 (Tex. 2003).





[4]
“Disposable retired pay” is defined as the total monthly retired pay to which a
member is entitled less certain amounts as applicable.  Id. §
1408(a)(4).





[5]
In Taggart the Court used the number of months of service that entitled
Mr. Taggart to the retirement benefits (360 months) rather than the actual
number of months of service at retirement.  The Supreme Court of Texas has
subsequently construed this fraction as follows:  “the number of months married
under the plan divided by the total number of months employed under the plan at
the time of retirement.”  Shanks, 110 S.W.3d at 446 (citing Taggart,
552 S.W.2d at 424).





[6]
There is an exception for enlisted members reduced in grade and officers who do
not serve satisfactorily in the highest grade held by the officer.  Id.
§ 1407(f).  In that case, section 1406 applies.  Id. § 1407(f)(1). 
There is nothing in the record to suggest that Husband falls into this
exception, thereby triggering section 1406.





[7]
To determine a member’s years of service, “each full month of service that is
in addition to the number of full years of service creditable to the member
shall be credited as 1/12 of a year; and any remaining fractional part of a
month shall be disregarded.”  Id. § 1405.





[8]
The divorce decree does make one reference to survivor benefits.  Under the
heading “Support as Obligation of Estate,” the trial court ordered that the
provisions of child support in the decree remained the obligation of Husband’s
estate and did not terminate on his death.  The decree states that “[p]ayments
received for the benefit of the children including payments from the Social
Security Administration, Department of Veterans Affairs or other governmental
agency or life insurance proceeds, annuity payments, trust distributions, or retirement
survivor benefits, shall be a credit against this obligation.” (Emphasis
added).   

The divorce decree orders Husband to purchase life
insurance and name Wife as primary beneficiary for the benefit of the children
as additional child support, but there is no indication that the life insurance
is a reference to the SBP annuity.  The decree states that Husband must
maintain the life insurance policy in full force and effect as long as child
support is payable under the terms of the decree.





[9]
“A person who has a former spouse upon becoming eligible to participate in the
Plan may elect to provide an annuity to that former spouse.”  Id. §
1448(b)(2)(A).  In addition, “[a] person who is a participant in the Plan and
is providing coverage for a spouse or a spouse and child (even though there is
no beneficiary currently eligible for such coverage), and who has a former
spouse who was not that person’s former spouse when that person became eligible
to participate in the Plan, may [subject to limitation] elect to provide an
annuity to that former spouse.”  Id. § 1448(b)(3)(A)(i)(I)–(II).





[10]
The informal settlement agreement does not specifically address the SBP
either.  





[11]
W-6 awards Wife a 50 percent portion of the community sums as a result of
Husband’s past or present employment.  H-6 awards Husband all sums as a result
of Husband’s past, present, or future employment, except that portion awarded
to Wife in the decree.