11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

Foy and Betty Jean Crockett

Appellants

Vs.                   No.
11-00-00374-CV B Appeal from Erath County

Eunice Elaine McSwain

Appellee

 

Following
a bench trial, the trial court rendered judgment that Eunice Elaine McSwain had
a valid first lien on 12.04 acres of land in Erath County.  The trial court ordered the judicial
foreclosure and sale of the land to satisfy a judgment debt owed to Eunice
under a divorce decree.  The trial court
also entered a take-nothing judgment against Foy and Betty Jean Crockett on
their counterclaim for a declaratory judgment that they had a superior lien
against the land.  The Crocketts argue
that the trial court erred in finding that Eunice had a lien against any part
of the land.  The Crocketts also argue
that the trial court should have entered a declaratory judgment that they are
subrogated to the rights of the Internal Revenue Service (IRS) and have a superior
lien against the 12.04 acres.  Finally,
the Crocketts contend that the trial court erred in awarding Eunice attorney=s fees and in failing to award them attorney=s fees. 
We reverse the trial court=s judgment, rendering judgment in favor of the Crocketts on their claim
and remanding the case to the trial court for a decision on attorney=s fees.

                                                                Background
Facts

Eunice and
Michael Ray McSwain were divorced on November 13, 1986.  The agreed judgment entered in that case
includes the following provisions:

Petitioner,
MICHAEL RAY McSWAIN, is awarded the following as Petitioner=s sole and separate property, and Respondent
is divested of all right, title, interest, and claim in and to such property:

 

(1) The
following real property:

 

The
unfinished house consisting of foundation, walls and roof situated on the
following described property, to wit: 
[the 12.04 acres].

 

(9) The
business known as 3-WAY SERVICE.








Respondent,
EUNICE ELAINE McSWAIN, is awarded the following:

 

(12) In
consideration for Respondent transferring and conveying all of her right, title
and interest in the business known as 3-Way Service, Inc., and her interest in
the homestead [the 12.04 acres], Respondent shall receive the sum of FORTY
THOUSAND AND 00/100 DOLLARS ($40,000.00) payable as follows: Five Thousand and
00/100 ($5,000.00) being paid each year in equal monthly installments for a
period of eight (8) years.

 

The
payments from Petitioner to Respondent are to be secured by a lien on the
property awarded to Petitioner in Paragraph 1, Page 6 of this Decree [the 12.04
acres].

 

Although
the divorce decree ordered Eunice to execute certain documents to effect the
transfer of her interest in the land and 3-Way business to Michael, the record
indicates that nothing was done.  The
trial court found that Michael made no payments on the $40,000 note. 

The IRS
filed a federal tax lien on the property in October 1989 because Michael had
failed to pay withholding taxes for 3-Way Service, Inc. during the last quarter
of 1985 and all four quarters of 1986. 
By July 31, 1995, Michael=s tax liability was $94,550.44, including penalty and interest.  The IRS accepted Michael=s compromise offer to pay $45,000 in
satisfaction of the entire claim.  The
Crocketts loaned the $45,000 to Michael and Susan, secured by a lien in a deed
of trust on the 12.04 acres after Michael and Susan had declared the 12.04
acres to be non-homestead property. 
Michael subsequently died.

On April
4, 1997, Eunice filed this in rem action to foreclose her Aequitable vendor=s lien@ on the property.  She joined
Susan and the Crocketts, among others, as defendants.  In her pleadings and during the trial, Eunice maintained that she
was seeking to enforce an equitable vendor=s lien that arose from the divorce decree.  The Crocketts= position at trial was that the property was the homestead of Eunice
and Michael; therefore, Eunice could not have had a lien on any part of the
property except the one-half interest that she conveyed to Michael in the divorce.  They also contended that, because the
divorce decree failed to specify the amount of the $40,000 that was
attributable to Eunice=s
interest in the property, no lien was created against the property.  Finally, the Crocketts argued at trial that
they had been subrogated to the rights of the IRS and that those rights
included a claim by the IRS against Eunice for the taxes.








The trial
court found that the divorce decree was unambiguous and created a superior
express lien in favor of Eunice against the land.  The trial court also found that Eunice=s lien was an owelty lien on the entire 12.04
acres.  The trial court entered judgment
for Eunice, denied any relief to the Crocketts on their counterclaim, and
awarded attorney=s fees to Eunice.

                                                                        Analysis

Eunice and
Michael agreed to a division of their marital estate; that agreement was
incorporated into an agreed divorce decree. 
An agreed judgment is both a contract and a judgment, and it is
interpreted under the rules of contract construction.  See Allen v. Allen, 717 S.W.2d 311, 313 (Tex.1986); McGoodwin v.
McGoodwin, 671 S.W.2d 880, 882 (Tex.1984). 
We agree with the trial court that the divorce decree is
unambiguous.  Construction of an
unambiguous contract is a question of law. 
Edwards v. Lone Star Gas Company, a Division of Enserch Corporation, 782
S.W.2d 840 (Tex.1990).  We review the
trial court=s conclusions of law de novo.  See Hitzelberger v. Samedan Oil Corporation,
948 S.W.2d 497, 503 (Tex.App. - Waco 1997, writ den=d); Armbrister v. Morales, 943 S.W.2d 202,
205 (Tex.App. - Austin 1997, no writ).

In their
first issue, the Crocketts argue that any lien in favor of Eunice could only be
against the one-half community interest that she conveyed to Michael in the
divorce decree.  The Crocketts also
contend that, because no lien in favor of Eunice was created against Michael=s one-half of the homestead, their lien on
his one-half of the 12.04 acres is superior to any lien claim of Eunice.  We agree.

Eunice
does not dispute that the 12.04 acres was their homestead.  The divorce decree declares that Eunice
shall receive $40,000 for her Ainterest in the business known as 3-Way Service, Inc. and her interest
in the homestead.@  The only land mentioned in the divorce
decree was the 12.04 acres; therefore, the Ahomestead@ must
refer to the 12.04 acres.








Although
the trial court found that Eunice=s lien was an express lien, there is no evidence that any express lien
in Eunice=s favor was reserved or granted in any deed
or deed of trust.  The divorce decree
simply states that the payments from Michael to Eunice Aare to be secured@ by a lien on the 12.04 acres Aawarded to@ Michael.  Even when there is no
document creating an express lien, if the purchase money is not paid to a
spouse for conveying his or her homestead interest to the other upon divorce, a
vendor=s lien arises by implication in favor of the
conveying spouse to secure payment of the purchase money.  McGoodwin v. McGoodwin, supra at 882.  But whether express or implied, any lien in
favor of Eunice could only be for a vendor=s lien to secure the purchase money owed for conveying her one-half of
the homestead to Michael.  Id. at 882;
Magallanez v. Magallanez, 911 S.W.2d 91, 94-95 (Tex.App. - El Paso 1995, no
writ).   At the time of the McSwain
divorce, the Texas Constitution only permitted liens against a homestead to
secure purchase money debt, taxes due, or home improvement debts.  TEX. CONST. art. XVI, ' 50. 
Michael continued to own his one-half of the homestead, and no lien was
created against his one-half by the divorce decree. Cole v. Cole, 880 S.W.2d
477 (Tex.App. - Fort Worth 1994, no writ).

Susan and
Michael created a valid lien on the 12.04 acres in favor of the Crocketts;
their claim on Michael=s
one-half is superior to Eunice=s.  The Crocketts= first issue is sustained.

In their
second issue, the Crocketts contend that, because the divorce decree failed to
specify what portion of the $40,000 was attributable to Eunice=s conveyance of her one-half of the
homestead, no lien was created in her favor against the 12.04 acres.  The divorce decree clearly provides that the
$40,000 was for her interest in the 3-Way business and her interest in the
12.04 acres, but there is no allocation of the purchase money between the two
properties.  Because this provision of
the divorce decree is unambiguous, the trial court should not have considered
extrinsic or parol evidence concerning the provision.  See Wilson v. Uzzel, 953 S.W.2d 384, 388 (Tex.App. - El Paso
1997, no writ).  The trial court erred
in its findings of fact and conclusions of law that the $40,000 note and lien
were consideration for Eunice=s interest in all of the marital estate or to equalize the division of
the marital estate.

Trison
Investment Company v. Woodard, 838 S.W.2d 790 (Tex.App. - Dallas 1992, writ den=d), holds that an implied vendor=s lien can only arise to secure the specific
purchase money amount that a spouse will receive for conveying his or her
interest in real estate to the other spouse. 
An implied vendor=s lien does not arise on the real property if there is no apportionment
of the consideration between the real property conveyed and the personal or
other property conveyed.  Id. at 792-93;
Goodwin v. Smith, 84 S.W.2d 827 (Tex.Civ.App. - Beaumont 1935, writ dism=d).








Even
though Trison did not involve a homestead interest and even assuming
that the McSwain divorce decree created an express lien, the reasoning of Trison
is persuasive.  The Trison court
was dealing with the legal fiction of implying a vendor=s lien, and the court reasoned that vendor=s liens are given to secure the purchase
money amount to be paid for the real estate interest.  At the time of the McSwain divorce, Article XVI, section 50 only
permitted liens against the homestead to secure purchase money debt, taxes due,
or home improvement debts.  The divorce
decree provides that the lien was to secure the entire $40,000 and that the
$40,000 was to be paid for Eunice=s interest in the 3-Way business and for her interest in the 12.04
acres.  The divorce decree represents an
attempt to create an unconstitutional lien to the extent of any consideration
paid for Eunice=s interest in the 3-Way business because the
record reflects that Michael continued to use the 12.04 acres as his homestead
immediately after the divorce decree. 
Michael was made the managing conservator of Eunice=s son, and the divorce decree recognized
Michael=s homestead interest by precluding
foreclosure of Eunice=s lien
until after the son reached 21 years of age. 

Because
the 12.04 acres was Michael=s homestead, the divorce court could only impose a vendor=s lien for a specific amount that was to be
paid for Eunice=s interest in the homestead.  Cole v. Cole, supra at 484.  The Crocketts= second issue is sustained.

The trial
court erred in finding that Eunice had an owelty lien.  Eunice, in her pleadings,  judicially admitted that she was requesting
foreclosure of an Aequitable
vendor=s lien.@  See Dutton v. Dutton, 18
S.W.3d 849, 853 (Tex.App. - Eastland 2000, writ den=d); Schoellkopf v. Pledger, 778 S.W.2d 897
(Tex.App. - Dallas 1989, writ den=d).  Her pleadings did not
request relief based on an owelty lien. 
Owelty liens are appropriate where the court cannot partition real
estate into equal shares without materially injuring its value.[1]  The court may divide the real property into
unequal shares, order payment of an owelty to equalize the value of the shares,
and then impose a lien on the greater share in favor of the recipient of the
lesser share to secure the owelty payment. 
See Sayers v. Pyland, 161 S.W.2d 769, 772 (Tex.1942).  There is nothing in the divorce decree to
indicate that the lien was an owelty lien. 
To the contrary, the divorce decree states that the lien was to secure
the $40,000 to be paid for Eunice=s interest in the 3-Way business and her interest in the
homestead.  And, although owelty liens
are now expressly authorized by the Texas Constitution, Article XVI, section
50, at the time of the McSwain divorce, did not authorize owelty liens against
homestead property.  








In their
third and fourth issues, the Crocketts contend that the trial court should have
declared that their lien claim is superior to any claim of Eunice and that they
are entitled to their attorney=s fees.  The evidence shows that
Michael and Susan gave a valid lien on the 12.04 acres to the Crocketts and
that the Crocketts were subrogated to the rights of the IRS against
Michael.  We need not decide whether the
Crocketts were subrogated to any IRS rights against Eunice.  The divorce decree failed to establish a
lien in favor of Eunice.  The trial
court erred in failing to declare that the Crocketts have a lien on the 12.04
acres that is superior to Eunice=s claim.  The Crocketts= third and fourth issues are sustained,
except that we will remand the case to the trial court for a decision on
whether attorney=s fees should be awarded to the Crocketts.

The Texas
Declaratory Judgments Act provides that, in any proceeding under the Act, the
court may award  Areasonable and necessary attorney=s fees as are equitable and just.@  TEX.
CIV. PRAC. & REM. CODE ANN. ' 37.009 (Vernon 1997).  The Act
does not require an award of attorney=s fees to the prevailing party. 
Instead, the Act provides the trial court a measure of discretion in
deciding whether to award attorney=s fees or not.  Bocquet v.
Herring, 972 S.W.2d 19 (Tex.1998); Commissioners Court of Titus County v. Agan,
940 S.W.2d 77, 81 (Tex.1997). Remand for a determination on the award of
attorney=s fees is appropriate.  

In their
fifth issue, the Crocketts contend that, because Eunice judicially admitted
that her claim was an in rem action for judicial foreclosure of a vendor=s lien, the trial court erred in awarding
attorney=s fees to her based on TEX. FAM. CODE ANN. ' 9.014 (Vernon 1998).  The Crocketts are correct.  Section 9.014 provides that a trial court
has the discretion to award reasonable attorney=s fees only in an action to enforce a divorce decree.  Eunice did not bring an action to enforce
the terms of a divorce decree; Michael=s estate was not named as a defendant. 
The authority for an award of attorney=s fees in a judicial foreclosure action is found in the terms of the
debt instrument creating the lien.  See
Jeffreys v. McGlamery, 96 S.W.2d 572, 576 (Tex.Civ.App. - Amarillo 1936, no
writ).  The divorce decree did not
provide for attorney=s fees
in the event of foreclosure.  Our
reversal of the trial court=s judgment also dictates a reversal of the award of attorney=s fees to Eunice.  The Crocketts= fifth issue is sustained.

                                                                This
Court=s Ruling

We reverse
the trial court=s judgment. 
We render judgment that the Crocketts= lien claim on the 12.04 acres is superior to Eunice=s claim and remand the case to the trial
court for a decision on whether attorney=s fees should be awarded.

 

November 1, 2001                                                                   TERRY
McCALL

Do not publish.  See TEX.R.APP.P. 47.3(b).                JUSTICE

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.











[1]Owelty liens today can be used to effect an equal
division of the entire marital estate. 
Article XVI, section 50; TEX. PROP. CODE ANN. ' 41.001 (Vernon 2000).