In the Matter of the MARRIAGE OF John S. ZVARA and Joanne M. Gillis.

No. 06–03–0010–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 7, 2004.

Decided Feb. 19, 2004.

Rehearing Overruled March 31, 2004.

Shawn Casey, Shawn Casey & Associates, Houston, for appellant.

Allison Jones, Allison Jones & Associates, PC, Houston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION

Opinion by Justice ROSS.

John S. Zvara appeals from an order of enforcement rendered by the trial court directing him to turn over property pursuant to his divorce from Joanne M. Gillis. The problem, from Zvara's point of view, is that stocks were the property involved, and between the time of mediation in March 2002 and the date on which the court ordered Zvara to give Gillis her portion of the stocks, October 11, 2002, their value dropped drastically.

The underlying activities in this lawsuit occurred in the following sequence:

| | |
|---|---|
| March 5, 2002: | Mediated settlement agreement |
| May 10, 2002: | Divorce decree signed by trial court (ordering Zvara to transfer two retirement accounts by Qualified Domestic Relations Order (QDRO): 50% of Vanguard account as of March 5, 2002; and 49% in Schwab account as of March 5, 2002) |
| August 26, 2002: | Petition for enforcement filed |
| September 26- October 9, 2002: | Hearing held on motion |
| October 11, 2002: | Court renders judgment in telephone conference |
| October 25, 2002: | Enforcement order signed (ordering Zvara to pay specific sums of money to Gillis) |
| October 30, 2002: | Gillis' motion to set aside and correct enforcement order filed |
| November 15, 2002: | Corrected enforcement order signed |
| December 4, 2002: | Notice of appeal from the November 15 order of enforcement filed |
| December 6, 2002: | QDRO signed |

Zvara does not attack the nature of the award or the procedure followed in obtaining the order but, in four points of error, contends: (1) there is no or insufficient evidence to support the monetary award and the court therefore erred by granting a monetary judgment to Gillis; (2) the written judgment did not conform to the oral rendition; (3) the clarification order and QDRO should be set aside because in those documents the trial court made substantive changes to the decree of divorce; and (4) the "clarification order and QDRO [must] be set aside because they are the fruits of the trial court wrongfully imposing its own terms and conditions onto the parties' contractual agreements."

**Issues on Appeal**

The appeal in this case is not from the decree of divorce. No appeal was taken from the decree, and it is now final. The

appeal is from the order of enforcement of that decree, in which Zvara contends that the trial court's order directing him to turn over specific dollar amounts has no support in the evidence elicited at the enforcement hearing and that the amounts as set out in the written judgment therefore cannot conform to the court's oral rendition. We emphasize that, although his first issue states he attacks both the legal and factual sufficiency of the evidence, the body of the brief and arguments made make no such contention. He provides no standard to be applied in our review, and the relief sought in the body of his argument is for a ruling as a matter of law in his favor. Thus, the argument actually made is a no-evidence claim, and we will so address his appeal.

In determining a no-evidence issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez*, 937 S.W.2d at 450.

The enforcement order sets out seven violations of the decree by Zvara, including refusing to release funds, transferring funds without tendering them to Gillis, refusing to list their residence for sale, and failing to execute the necessary stock transfers to Gillis. The court then found Zvara in contempt for each violation and ordered him to:

1) Replace and transfer 50% of the March 5, 2002 money value of the Vanguard Account No. 0990011908, into a Vanguard Account in the name of JOANNE M. GILLIS, which said Fifty Percent (50%) equals Forty–Four Thousand Nine Hundred Seventy-one and 50/100ths ($44,971.50) Dollars. JOHN S. ZVARA shall pay to JOANNE M. GILLIS an additional amount equal to any dividends, splits, and other rights and privileges of said account attributable to Vanguard Account No. 0990011908 since March 5, 2002, until the date of replacement and transfer. JOHN S. ZVARA shall pay to JOANNE MARIE GILLIS the amount of One Thousand Seven Hundred Thirty-nine and 76/100ths ($1,739.76) Dollars representing the increased value in said account, plus the Forty–Four Thousand Nine Hundred Seventy-one & 50/100ths ($44,971.50) Dollars, for a total due and payable to JOANNE MARIE GILLIS of Forty-six Thousand Seven Hundred Eleven & 26/100ths ($46,711.26) Dollars on or before November 15, 2002 at 10:00 a.m. in the 245th Judicial District Court of Harris County, Texas. JOHN S. ZVARA is ORDERED to pay all taxes and/or penalties associated with the removal of such shares from the original Vanguard Account.

2) Release and transfer Forty-nine percent (49%) of the Schwab Account value, Account # 9768–7131 as of March 5, 2002, into an account in JOANNE MARIE GILLIS's name, Account # 22104254, along with any dividends, splits and other rights and privileges from March 5, 2002 until the date of replacement and transfer. JOHN S. ZVARA shall pay to JOANNE MARIE GILLIS all amounts under this paragraph, for a total of $67,667.93 on or before November 15, 2002 at 10:00 a.m. in the 245th Judicial District Court of Harris County, Texas. The Court finds that since JOHN S. ZVARA has taken his portion of the Schwab Account, he shall transfer the entire Schwab Account to JOANNE M. GILLIS no later than November 15, 2002 at

10:00 a.m. This amount will be credited toward the amount owed by JOHN S. ZVARA to JOANNE M. GILLIS in this Order.

In his argument, Zvara focuses his attention on testimony by Gillis in which she stated that her intention was to liquidate the stock and purchase a house, and extrapolates from her testimony that her true complaint was he did not turn over the assets in a "timely" fashion. From that starting point, he then, in an extremely cursory fashion, suggests that, because she had no evidence of a date that would have been "timely," and no evidence of value on that date, then she presented no evidence to support an award.

Gillis sought enforcement of the prior agreed division because Zvara had refused to turn over the contents of the accounts. By so doing, she argued that any payment was not made in a timely manner. However, the amount she claimed was due was the amount awarded by the divorce decree: the amounts calculated in the mediated settlement agreement signed by the parties March 5. When dividing the property of a marriage, the trial court must find a point at which to value the property so that the division may be "just and right" as required by the Texas Family Code. The parties had both agreed on a property division March 5. Zvara therefore cannot now successfully argue there is no evidence which would allow the court to enforce the division agreed to on that date.

We now turn to the dollar amounts awarded by the court. In this case, as recognized by Zvara, there was clear and undisputed documentary evidence before the trial court of the amounts in those accounts on March 5. Under this argument

in his brief, he complains error is shown because the court couched its award as a percentage when it rendered its judgment in a telephone conference. Zvara does not complain about that form of rendition, but contends that, because the enforcement order sets out the award in terms of specific dollar amounts, it was rendered in error because he was not privy to the mathematical computations used to arrive at the result.

In the oral rendition, the trial court ordered Zvara to replace and turn over to Gillis the March 5, 2002, money value of the Vanguard account, as shown by Exhibit 2, and to transfer to her 49% of the Schwab account value, also as of March 5, as shown by Exhibit 1. The court also ordered Zvara to provide whatever dividends, splits, or other rights may have accrued from March 5 until the date of transfer. Those two exhibits contain snapshot appraisals of the accounts and their values as of March 5.[1]

Exhibit 1 shows that, on March 5, 2002, the Schwab account had a market value of $135,335.86. Exhibit 2 shows that, on March 5, 2002, the Vanguard account had a total value of $89,943.01. There is a problem. As set out above, the division of the Vanguard account, $89,943.01 X 50% = $44,971.50. Thus, the court's mathematics is correct. However, the court also multiplied the Schwab account balance by 50% instead of the 49% specified in its order. The resulting difference is between $135,335.86 X 50% = $67,667.93 (the amount awarded) and the correct computation of $135,335.86 X 49% = $66,314.57.[2] In other words, the court ordered payment by Zvara of $1,353.36 that was not due

---

1. Although the order mentions other possible sources of money, there is no evidence of such.

2. We also note counsel provided the correct figure at the hearing.

under evidence specifically referenced in the trial court's order.

■ The court also ordered Zvara to pay an additional $1,739.46 that, in its findings of fact, it states is the amount of "dividends, splits, and other rights and privileges" accruing on Gillis' portion of the Vanguard account since the March 5 division date. However, we have not been directed to, and we have not found, any evidence to support that award.

■ There is evidence of the amount due. It is also clear the error made by the court is a computational error. Thus, the contention of error is overruled. Under these circumstances, we decline to remand the case to the trial court for correction of a simple computational error. We therefore modify a portion of the court's judgment to render judgment for 49% of the amount in the Schwab account, $66,314.57. We further modify the judgment to also delete the award of $1,739.46 on the Vanguard account.

■ Zvara last contends that the $6,682.00 awarded as attorney's fees is unsupported by the evidence and also contends that it conflicts with counsel's testimony that her total fees were $4,935.50. Zvara has not directed this Court to all of the relevant evidence. The evidence he references does not include attorney's fees for the trial itself. At the conclusion of evidence, Gillis' counsel tendered a summary of her fees charged for the trial itself through 11:30 a.m. October 9, that raised the total to $5,971.50. In addition, in the telephone conference at which the court rendered its judgment, it also directed Gillis' counsel to prepare a QDRO and ordered Zvara to pay all fees and costs as reflected by a final bill that was to be prepared after counsel prepared the QDRO. It is also apparent that, after the telephone exchange October 11, counsel

also requested and obtained a corrected enforcement order November 15, as well as providing the QDRO, which was signed December 6.

The trial court had before it evidence that counsel charged $250.00 per hour for her services and a specific invoice through 11:30 a.m. on the date of the hearing totaling $5,971.50. Although counsel was directed to provide a bill for her later services, none appears in this record. The difference between the amount eventually awarded and the evidence tendered at the hearing is just over $1,000.00, or four hours' work by counsel at her stated hourly rate.

The contention is phrased only as a no-evidence contention, and we will review it on that basis under the standard set out above. This Court has recently addressed a situation in which similar information was provided to a fact-finder. In *Holmes v. Concord Homes, Ltd.*, 115 S.W.3d 310 (Tex.App.-Texarkana 2003, no pet.), we reviewed a situation where counsel testified to specific dollar amounts incurred through a portion of the trial, as well as to his regular rates. We concluded that, because the fact-finder watched counsel conduct the trial, knew the hourly rate charged (and certainly the length of time involved), and could easily determine the amount of additional charges, we could not conclude the award of fees was unsupported by the evidence.

In this case, the record does not clearly set out the length of the trial or the amount of time counsel was before the court after the time reflected by the final invoice introduced into evidence. It is apparent that, after that time, documents were filed and prepared by counsel in obtaining corrections to the enforcement order, in obtaining or facilitating the preparation and filing of a number of other documents that were the subject of the

enforcement action, and that counsel appeared before the court when it rendered the oral judgment and as reflected by the docket, and appeared personally for the entry of the QDRO. There is also evidence counsel appeared in court for the entry of the original enforcement order October 25.

In light of the sequence of events set out above, which was necessarily before the fact-finder in this case, we cannot say there is no evidence to support the award, including an additional four hours of time expended by counsel. The contention of error is overruled.

■ Zvara further contends the clarification order and the QDRO should be set aside because they do more than clarify the divorce decree; they actually altered both the decree of divorce and the underlying agreements of the parties. Clarification orders are explicitly discussed in TEX. FAM.CODE ANN. § 9.008 (Vernon 1998) in connection with contempt proceedings, which is the context of this proceeding. Zvara correctly points out that the clarification order cannot amend or change the actual division of the property. *See Wilson v. Uzzel,* 953 S.W.2d 384, 391 (Tex. App.-El Paso 1997, no writ).

Zvara argues that for the court to "clarify" the decree by directing him to list the marital residence with a real estate broker other than himself—or any broker associated with him—is beyond the language of the decree, which allowed him to list the house with any broker, including himself. That argument disregards the fact that this clarification proceeding was also an enforcement and contempt proceeding. There was evidence from which the trial court could have concluded Zvara was making no effective effort to sell the property and therefore ordered it listed for sale in some other fashion in order to expedite the sale.

As an enforcement order, pursuant to TEX. FAM.CODE ANN. § 9.007(a) (Vernon 1998), the trial court had the authority to render orders to assist in the implementation of the property division. The order did not change the substantive division. The order merely attempts to enforce the division already made. Error has not been shown.

Zvara also complains the trial court improperly changed the percentage award to his ex-spouse on the Schwab account. He does not specify what change allegedly occurred. We assume he is arguing the 49%–50% dichotomy discussed and disposed of above. Accordingly, we need not further address that matter under this contention of error.

We affirm the judgment, as modified.