**Billy Claude PHILLIPS, Appellant,**

v.

**Beverly Crowe Phillips PARRISH, Appellee.**

No. 01–90–00751–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 1, 1991.

Dennis B. Kelly, Sallee S. Smith, Houston, for appellant.

Sandra R. Peebles, Houston, for appellee.

Before DUGGAN, MIRABAL and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This Court is asked whether post-divorce increases in an individual's employment retirement benefits—not attributable to raises, promotion, services rendered or contribution—are subject to community property division. The trial court below found they were, and we affirm.

### 1. Summary of the facts

Billy Claude Phillips (Husband) and Beverly Crowe Phillips (Wife) were married in 1959. In 1964, the Husband became employed as a longshoreman and began accruing retirement benefits. The Phillips divorced in 1976, 152 months after the beginning date of the Husband's employment. The divorce decree was silent on the distribution of retirement benefits. The Husband continued to work until he retired in April of 1989, 151 months after the divorce. The month after the Husband retired, the Wife filed a post-divorce partition suit to claim her share of the Husband's retirement benefits. Two months after the Wife filed this suit and in response to this suit, the Husband returned to work, terminating his monthly pension benefits.

Trial was to the court. The trial court awarded the Wife an undivided 30% interest in the Husband's pension plan and a 50% interest in his "bridge benefits." Bridge benefits are monthly benefits payable to the Husband from the date of retirement through age 62, to supplement the amount of his monthly pension benefit until he begins receiving monthly Social Security benefits. The Husband appeals.

### 2. Extrinsic evidence

In point of error one, the Husband claims the trial court erred when it refused to permit him to introduce extrinsic evidence to reconcile an ambiguity in the divorce agreement. The final decree of divorce incorporated the divorce agreement by reference. The Husband argues the trial court should have received evidence on the ambiguity and then reformed the agreement (the divorce decree) to reflect the true intent of the parties.

The Husband argues that the "intention clause" and the "residuary clause" in the agreement are in conflict. The "intention clause" states:

It is the purpose and intent of this agreement to settle forever and completely the interest and obligations of the parties in *all* their matrimonial property.

(Emphasis added.) The "residuary clause" states:

> All community property which is not listed in any attached schedule shall be owned by wife and husband as equal cotenants; and each party hereby conveys and assigns to the other an undivided one-half interest in any community property owned by the granting party, *which is not listed on any attached Schedule.*

(Emphasis added.) The Husband maintains his retirement benefits were considered by the parties and the agreement awarded them to him.[1]

After hearing arguments by both counsel, the trial court found there was no ambiguity, that the "residuary clause" was controlling, and excluded the offered evidence. The Husband presented the excluded evidence in a bill of exception.

██ A party who contends that an agreement is ambiguous must prove that the agreement is uncertain, doubtful, or is susceptible to more than one meaning. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983); *Gunter v. KIKK Radio Station,* 727 S.W.2d 650, 651 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). If the party can convince the court that the language is ambiguous, the party may introduce extraneous evidence to determine the true meaning of the agreement. *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex.1980). Whether the language of a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was made. *Coker,* 650 S.W.2d at 394; *Gunter,* 727 S.W.2d at 651. If the court decides the contract is ambiguous, the interpretation of the contract is a fact issue to be resolved by the fact finder. *Coker,* 650 S.W.2d at 394; *Gunter,* 727 S.W.2d at 651.

If a written agreement is worded so that it can be given a certain or definite legal meaning or interpretation, then the agreement is not ambiguous. *Coker,* 650 S.W.2d

at 393; *R & P Enter.,* 596 S.W.2d at 519. In such a case, the court will construe the contract as a matter of law. *Coker,* 650 S.W.2d at 393; *R & P Enter.,* 596 S.W.2d at 519.

██ In the alternative, the Husband argues that the agreement is governed only by contract law and that the agreement may be reformed to correct a mutual mistake and to reflect the true intent of the parties. The Husband cites *Allen v. Allen,* 717 S.W.2d 311, 313 (Tex.1986) and *McGoodwin v. McGoodwin,* 671 S.W.2d 880, 882 (Tex.1984); *but cf. Spradley v. Hutchinson,* 787 S.W.2d 214, 219 (Tex. App.—Fort Worth 1990, writ denied) (once the agreement of the parties has been approved by the court and made part of its judgment, the agreement is no longer merely a contract between private individuals but is the judgment of the court).

The Husband asserts that both the Wife and the Husband believed that the Decree resolved and divided all property held at the time of marriage, including the retirement benefits. The evidence offered in the bill of exception, as the Husband argues, shows that both parties intended to forever and completely sever their relationship and dispose of *all* matters. The Husband contends that the Wife testified that although she was aware of the retirement benefits, she believed she had no rights in them.

The record only reflects that the Wife believed the benefits were indivisible. In addition, the Wife correctly argues that the Husband did not plead the affirmative defense of "mutual mistake." Rule 94 of the Texas Rules of Civil Procedure requires a party to plead any matter that constitutes an avoidance or affirmative defense. Mutual mistake is an affirmative defense that must be pleaded or it is waived. *Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866, 869 (Tex.App.—San Antonio 1980, no writ).

Finding that the provisions were not ambiguous and the Husband failed to plead

---

1. In finding of fact number five, the court found that neither the divorce decree nor the agreement incident to the divorce, which was incorporated in the decree, made any references to any pension plan.

mutual mistake, we overrule point of error one.

### 3. Benefits previously divided

■ In points of error two and three, the Husband complains that the benefits were divided by the trial court in the final decree of divorce. Husband asserts that he was awarded *all* of his pension and bridge benefits pursuant to the agreement, which awarded him "any and all personal property and effects in possession of Husband."

This Court has held that pension benefits are not property "in possession." *Smith v. Smith,* 733 S.W.2d 915, 916–17 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). "Possession," as used in residuary clauses of this type, means the physical control of property or the power of immediate enjoyment and disposition of property. *Id.* at 917. Other courts have reached the same conclusion. *See, e.g., Dunn v. Dunn,* 703 S.W.2d 317, 319 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Dessommes v. Dessommes,* 505 S.W.2d 673, 676 (Tex.App.—Dallas 1973, writ ref'd n.r.e.).

Because the Husband did not have physical control or power of immediate enjoyment and disposition over the retirement benefits on the date of the divorce decree, the benefits were not property in his possession.[2] The retirement benefits, there-fore, could not have been property awarded by the residuary clause.

We overrule the Husband's points of error two and three.

### 4. Divestiture of separate property

■ In points of error four and five, the Husband urges that the trial court's partition of the pension benefits and bridge benefits divested him of his separate property. Husband contends that the trial court erred in awarding *any* post-divorce increases in the pension and bridge benefits. The parties agree that the increase in the value of benefits from $449.51 per month, at time of divorce, to $1,340.35 per month, as of date of retirement, resulted from his continued employment, changes to the plan, a 100% increase in the bridge benefit, and cost-of-living adjustments.

The Husband contends that, because they divorced before he retired, the court should apply the formula in *Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983), to determine the Wife's share of retirement benefits. The Husband argues that the opinion in *May v. May,* 716 S.W.2d 705 (Tex. App.—Corpus Christi 1986, no writ), compels the strict application of the *Berry* formula.

The Husband correctly summarizes the *Berry* formula as follows:

$$\frac{1}{2} \times \frac{\text{No. months married under plan}}{\substack{\text{No. months employed under plan} \\ \text{at time of divorce}}} \times \substack{\text{Value} \\ \text{of plan} \\ \text{at date} \\ \text{of divorce}} = \substack{\text{Non-employed} \\ \text{spouse's} \\ \text{share}}$$

*Berry,* 647 S.W.2d at 946–47; *see also May,* 716 S.W.2d at 707. According to the *Berry* formula, the Husband figures that the Wife's monthly share of the benefits payment should be $224.76.

During trial, the Wife's expert witness testified that if the benefits had vested at the time of the divorce, the Wife's monthly share would have been $224.76. Using that as a starting figure, the expert then added the cost-of-living increases and the upgrading by the Maritime Association to calculate the Wife's current share to be $457.38 per month. The expert excluded from the computation any increases that resulted from the Husband's continued employment.

**2.** The Husband did not have the power to control the retirement benefits until he retired, some 151 months after the divorce.

The Husband argues that both the *Berry* and *May* courts held all post-divorce increases in retirement benefits are the separate property of the employed spouse. The Wife relies on *Grier v. Grier*, 731 S.W.2d 931, 933 (Tex.1987) to support her argument that some post-divorce increases are community property and must be considered in calculating the unemployed spouse's share. In *Grier*, the wife was awarded a percentage of retirement benefits "together with increases which may occur other than increases attributable" to the Husband's elevation in rank in the military following the divorce. *Id.* Quoting from the article *Selected Current Issues In Community Property Aspects of Retirement Plans*, Hopwood, Roberts, Paulsen, 39 BAYLOR L.REV. 1199 (1987), the Wife argues: "It is clear that cost of living increases can now be taken into account, in at least some cases, mitigating the otherwise harsh effects of *Berry.*"

We hold that both *Grier* and *Berry* support the Wife's claim. In *Berry*, the Texas Supreme Court said:

> It is clear from the record in this case that twelve additional years of work following divorce, which included some twelve to fourteen pay raises, plus union contract negotiations for an improved benefits plan, brought about the increase in retirement benefits paid to Mr. Berry. These post-divorce increases cannot be awarded to Mrs. Berry, for to do so would invade Mr. Berry's separate property, which cannot be done.

647 S.W.2d at 947. Here, the record reflects that none of the post-divorce increases granted to the wife were attributable to the Husband's continued employment. *Harrell v. Harrell*, 700 S.W.2d 645, 648 (Tex.App.—Corpus Christi 1985, no writ). They were increases that were permissible under the holdings of *Grier*, *Berry*, *Harrell*, and *May*. *See also Humble v. Humble*, 805 S.W.2d 558, 559 (Tex.App.—Beaumont 1991, writ denied).

We overrule the Husband's points of error four and five.

**5. Monthly amount value at divorce**

■ In points of error six and seven, the Husband argues that the trial court erred in awarding a *percentage interest* of the benefits to the Wife. The Husband asserts, if Wife is entitled to the benefits, she should be awarded a *fixed monthly amount*, valued at time of divorce. The Husband contends that, by the Husband's continued employment and participation in the pension plan, the Wife could receive even greater amounts than those testified to in trial.[3] The Husband, therefore, argues that a percentage award would, over time, result in the additional divestiture of his separate property.

Under the Employment Retirement Income and Security Act of 1974 (ERISA) [29 U.S.C. § 1056(d)(3)(E)(i)(I) (1990) as amended by the Retirement Equity Act of 1984 (REA) (P.L. 98–397) ], the Wife argues that the Maritime Association must assign and transfer to her exclusive benefit her cotenancy interest once the Husband retired on April 1, 1989. The Wife asserts that this has the effect of establishing two accounts under the benefits plan: one account, which represents her present 30% share of the pension plan and 50% share of the bridge benefits, and another account, which represents the Husband's remainder.

The Wife argues that, if the plan voluntarily increases payments in the future, she will only receive an increase based on her 30% separate interest in the pension benefits. Accordingly, the bridge benefit can only change because of cost of living adjustments granted by the plan administrator, not by any time worked or services performed by the Husband. Thus, if the Maritime Association decides to increase the bridge benefit, 50% of the increase belongs to the Wife.

Texas courts have repeatedly approved the percentage awards. *See, e.g., Cameron v. Cameron*, 641 S.W.2d 210, 213 (Tex. 1982) (35% of future retirement benefits); *Harrell v. Harrell*, 700 S.W.2d 645, 648 (Tex.App.—Corpus Christi 1985, no writ)

---

**3.** As of date of trial, Husband had no immediate plans for a second retirement and continues to work and accrue benefits under the benefits plan.

**506**

(67.2% of post-divorce increases to the retirement benefits).

We overrule the Husband's points of error six and seven.

### 6. Improper findings of fact

In points of error eight and nine, the Husband challenges some of the findings of fact as not supported by the evidence, and challenges the trial court's refusal to make certain additional findings. After the Husband filed a request for additional findings of fact and conclusions of law, the trial court filed amended findings of fact and conclusions of law.

 The Husband argues that amended finding of fact number 11 is "blatantly incorrect and contrary to the evidence." The disputed finding of fact states:

> At the time of trial, [the Wife's] total monthly share of the basic benefits is valued at $307.38; whereas [the Husband's] total share is $727.98. [The Wife's] share is approximately 30% of the total of $1,035.36.

The Husband argues that expert testimony established that the monthly pension benefit was $1,340 and his share was $732.98. The Wife correctly responds that a $5 mathematical error is insignificant and that the proper values can be calculated using amended findings of fact numbers nine and 10. The doctrine of *de minimis non curat lex*[4] controls the disposition of the Husband's argument.

The Husband argues also that the trial court erred in refusing to make certain additional findings. The Husband contends that the additional findings would clarify the trial court's judgment. A trial judge is required to make findings only on ultimate, controlling, and material issues. *Yates Ford, Inc. v. Benavides*, 684 S.W.2d 736, 739 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). A trial court is not required to make additional findings if they are merely evidentiary in nature. *Dura-*

*Stilts Co. v. Zachry*, 697 S.W.2d 658, 661 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Here, the trial court adopted those findings and conclusions that were relevant to the judgment, and no additional findings were necessary.

Finding the Husband's arguments to be without merit, we overrule the Husband's points of error eight and nine.

---

4. "The law does not care for, or take notice of, very small or trifling matters." BLACK'S LAW DICTIONARY 388 (5th ed. 1979). *See, e.g., Tri County Farmer's Co-Op v. Bendele*, 641 S.W.2d 208, 209 (Tex.1982); *Bichsel v. Carver*, 159 Tex. 393, 396, 321 S.W.2d 284, 286 (Tex.1959); *Missouri Pac. Ry. Co. v. Colquitt*, 9 S.W. 603, 604 (Tex.1888).