Reversed and Remanded and Opinion filed January 20, 2004









Reversed and Remanded and Opinion filed January 20, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01081-CV

____________

 

MAUREEN LOUISE STAVINOHA, Appellant

 

V.

 

PAUL ANTHONY STAVINOHA, Appellee

 



 

On Appeal from the 257th
District Court

Harris County, Texas

Trial Court Cause No. 00-32251

 



 

O P I N I O N

In this case we are asked to decide the proper
characterization of retirement benefits of a police officer who participated in
the Houston Police Officer=s Pension System Deferred
Retirement Option Plan.  Based on the facts
of this case, we hold that all of the officer=s benefits were fully vested
and, to the extent they were earned during marriage, were community property.

 

 








I.        FACTUAL AND
PROCEDURAL BACKGROUND

Appellee Paul Anthony Stavinoha began working for the City of Houston as a police
officer on January 20, 1975.  He became a
member of the Houston Police Officers Pension System (AHPOPS@) on May 10, 1975.  Four years after this, Paul and appellant,
Maureen Louise Stavinoha, were married on June 9,
1979.

Paul became eligible to retire on May 10, 1995, but instead
of retiring immediately, in November of 1995 he elected to participate in the
HPOPS Deferred Retirement Option Plan (ADROP@).  DROP is an optional method to receive
benefits available to HPOPS members with 20 or more years of credited pension
service with the City of Houston.  Under
DROP, the member continues working and receiving a salary, and the monthly
retirement annuity the member could have received upon retirement is credited
to a notional DROP account in the member=s name.  When the member retiresCstops the DROP programChe or she is entitled to
receive the amount accumulated in the DROP account in a lump sum, and is also
entitled to receive payment of the monthly pension benefit.

In the summer of 2000, approximately four and one-half years
after Paul began participating in the DROP, the parties petitioned for
divorce.  Issues concerning conservatorship, possession and access, and child support
for their two minor children were resolved through mediation.  Property issuesCin large part dominated by
whether Paul=s retirement benefits paid into
the DROP account were community or separate propertyCwere tried in a nine-day bench
trial.  The final decree of divorce was
entered on June 21, 2002.








The decree provided that (1) the monthly benefit credited to
the DROP account from 1995 until the date of divorce (June 21, 2002), was
apportioned between the community and separate estates; (2) the monthly benefit
credited into the DROP account after June 21, 2002, but prior to Paul=s actual separation from
service, was characterized as 100% Paul=s separate property; and (3)
the monthly benefit paid after Paul=s actual separation from service
was apportioned between the community and separate estates.  Maureen was awarded 50% of the apportioned
retirement benefits.  The decree further
provided that the community had no interest in annual cost-of-living
adjustments (COLAs) and other benefits paid post-divorce. 

At Maureen=s requestCand after Maureen filed a
notice of past due findings and conclusionsCthe trial court issued findings
of fact and conclusions of law.  This
appeal followed.

II.       CONTROLLING
STATUTORY AND CASE-LAW RULES

On appeal, Maureen raises three issues in which she attacks
specific findings of fact and conclusions of law.  She complains that the trial court wrongly
characterized community property as separate and that this mischaracterization
caused a disproportionate division of her marital estate that was manifestly
unfair and unjust.  This claim requires
us to apply a number of rules and some statutes.

A.      Definitions
and Rules Related to Property

Several special rules and standards govern our review of
this judgment.  We begin with the
definitions and rules related to property. 
Separate property is
defined in the Texas Constitution as A[a]ll
property, both real and personal, of a spouse owned or claimed before marriage,
and that acquired afterward by gift, devise or descent.@ 
Tex. Const. art. XVI, ' 15. 
The Texas Family Code defines separate property as that property owned
by a spouse before marriage, acquired during the marriage by gift, devise, or
descent, or as a recovery for personal injuries sustained during the
marriage.  See Tex. Fam. Code ' 3.001. 

Community property consists of the property, other than
separate property, acquired by either spouse during marriage.  See Tex.
Fam. Code ' 3.002; Barnett v. Barnett, 67 S.W.3d 107, 111 (Tex.
2001).  All property possessed by either
spouse during or on dissolution of marriage is presumed to be community
property.  Tex. Fam. Code ' 3.003(a); Barnett, 67 S.W.3d
at 111.  








To overcome the community property presumption, a spouse
claiming assets as separate property is required to establish their separate
character, not merely by a preponderance of the evidence, but by clear and
convincing evidence.  Tex. Fam. Code ' 3.003(b); McElwee
v. McElwee, 911 S.W.2d 182, 188 (Tex. App.CHouston [1st Dist.] 1995, writ
denied).  AClear and convincing@ evidence means the measure or degree
of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.  In re J.F.C.,
96 S.W.3d 256, 264 (Tex. 2002); Slaton v. Slaton, 987 S.W.2d 180, 182
(Tex. App.CHouston [14th Dist.] 1999, pet.
denied); see also Tex. Fam. Code ' 101.007.

B.      Standard
of Review when an Estate has been Divided

In a divorce decree, the trial court Ashall order a division of the estate
of the parties in a manner that the court deems just and right, having due
regard for the rights of each party and any children of the marriage.@ 
Tex. Fam. Code ' 7.001.  To disturb a trial court=s division of property, Maureen must show
the trial court clearly abused its discretion by a division or an order that is
manifestly unjust and unfair.  See
Evans v. Evans, 14 S.W.3d 343, 345B46 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  Under this abuse of discretion
standard, the legal and factual sufficiency of the evidence are not independent
grounds of error, but are merely relevant factors in assessing whether the trial
court abused its discretion.  Zieba v. Martin, 928 S.W.2d 782, 790 (Tex.
App.CHouston [14th Dist.] 1996, no writ).
 We must remand the entire community
estate for a new division when we find reversible error that materially affects
the trial court=s Ajust and right@ division of the property.  See Jacobs v. Jacobs, 687 S.W.2d 731,
732 (Tex. 1985).








We review the trial court=s conclusions of law de novo.  Smith v. Smith, 22 S.W.3d 140, 143B44 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  Conclusions of law may not be
challenged for factual insufficiency.  Zieba, 928 S.W.2d at 786 n.3.  The standard of review is whether the
conclusions of law drawn from the facts are correct.  Zieben v.
Platt, 786 S.W.2d 797, 802 (Tex. App.CHouston [14th Dist.] 1990, no
writ).  We will uphold conclusions of law
on appeal if the judgment can be sustained on any legal theory the evidence
supports.  Waggoner v. Morrow, 932
S.W.2d 627, 631 (Tex. App.CHouston [14th Dist.] 1996, no writ).  Thus, incorrect conclusions of law do not
require reversal if the controlling findings of fact support the judgment under
a correct legal theory.  Id.

C.      Heightened
Review of Separate Property Claims

Paul concedes he had the burden of proof to demonstrate by
clear and convincing evidence that the disputed benefits are his separate
property.  Recently, the Texas Supreme
Court, in a parental termination case, clarified our standard of review when a
party challenges findings that must be supported by clear and convincing
evidence.  See In re C.H., 89
S.W.3d 17, 25 (Tex. 2002) (discussing factual sufficiency review); In re
J.F.C., 96 S.W.3d 256, 264B68 (Tex. 2002) (discussing
legal sufficiency review).  In these
cases, the Court reasoned that the traditional legal and factual sufficiency
reviews were inadequate to accommodate the clear and convincing burden of proof
in termination proceedings, concluding that Athe burden of proof at trial
necessarily affects appellate review of the evidence.@  J.F.C., 96 S.W.3d at 264 (quoting C.H.,
89 S.W.3d at 25).  In light of these
comments in C.H. and J.F.C., that the burden of proof at trial
necessarily affects appellate review of the evidence, we will apply the
standard of review the Court articulated in these cases. 

1.       Legal
Sufficiency Review with Heightened Standard








J.F.C. held that when we conduct a
legal sufficiency review of a separate property finding, we are instructed to
look at all the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its finding was true.  See J.F.C., 96 S.W.3d at 266.  Looking at the evidence in the light most
favorable to the finding means that we must (1) assume that the fact finder
resolved disputed facts in favor of its finding if a reasonable fact finder could
do so, and (2) disregard all contrary evidence that a reasonable fact finder
could have disbelieved or found to have been incredible.  See id.  However, we are not required to disregard
undisputed facts that do not support the finding, because that might skew a
clear and convincing analysis.  See
id.  If we determine that no
reasonable fact finder could form a firm belief or conviction of the truth of
the matter to be proved, we must conclude that the evidence is legally
insufficient.  See id. 

2.       Factual
Sufficiency Review with Heightened Standard

Likewise, under C.H., a new factual sufficiency
review applies.  We must consider whether
all of the evidence is such that a factfinder could
reasonably form a firm belief or conviction about the truth of the allegations
sought to be established.  See C.H.,
89 S.W.3d at 25; J.F.C., 96 S.W.3d at 266.  We should consider whether disputed evidence
is such that a reasonable fact finder could not have resolved that disputed
evidence in favor of its finding. See J.F.C., 96 S.W.3d at 266 (citing
C.H., 89 S.W.3d at 25).  If, in light of the entire record, the
disputed evidence that a reasonable fact finder could not have credited in
favor of the finding is so significant that a fact finder could not reasonably
have formed a firm belief or conviction, then the evidence is factually
insufficient.  See id.  If we determine the evidence is factually
insufficient, we are to detail in our opinion why we have concluded that a
reasonable fact finder could not have credited disputed evidence in favor of
the finding.  See id. at 266B67.

III.      MAUREEN=S ISSUES

In this matter of first impression in Texas, we are asked to
determine whether, when a member of the HPOPS divorces after electing to enter
its DROP program, the retirement benefits that are deferred because of DROP
participation are (1) the member=s separate property or (2)
community property subject to a just and right division at divorce.

In her first and second issues, Maureen argues that the
trial court abused its discretion because the evidence was legally and factually
insufficient to support the court=s characterization of the DROP
benefits as separate property. 
Specifically, Maureen contends the following deferred retirement
benefits were community property, not Paul=s separate property:

1.       the monthly
retirement pension credited to the DROP account post-divorce;








2.       the annual
cost-of-living adjustments (COLAs);

3.       the 13th
annual payment benefit;[1]

4.       the monthly
benefit for defraying health insurance costs;[2]
and 

5.       the one-time
$5,000 lump sum payment.[3]

Collectively, we refer to these benefits as the Adisputed benefits.@[4]  Maureen also challenges the following
conclusions of law:

10.     [Paul] is entitled to the confirmation as his separate property
that property which he owned prior to his marriage and those pension benefits
anticipated to accrue in the future through his employment but for which [Paul]
has not yet received right, title or interest.

11.     The division of the property of
[Paul] and [Maureen] as reflected in the Final Decree of Divorce signed in this
cause on June 21, 2002 is just and right, having due regard for the rights of
each party and the children of the marriage, irrespective of the
characterization of any item of property as either community or separate.  








Maureen argues that the trial court erred in distinguishing
the benefits received before the divorce from those deferred until after the
divorce because Paul chose to participate in DROP.  She claims (1) the disputed benefits were
vested and fixed as of the date he Aretired@ for purposes of entry into the
DROP in 1995 (prior to the divorce), and (2) Paul=s continuing employment and any
possible increases in pay or promotions can have no effect on the amount of his
pension benefits.[5]  As we explain below, having reviewed the
evidence presented at trial and the applicable statutory provisions, we agree.

IV.      ANALYSIS

A.      Whether
Retirement Benefits are Community or Separate Generally Depends on When They
were Earned

Retirement benefits earned by the employee spouse during
marriage are community propertyCsubject to division upon
divorceCeven though they are not
immediately subject to possession and enjoyment at the time of divorce.  See Cearley
v. Cearley, 544 S.W.2d 661, 662 (Tex. 1976); Herring
v. Blakeley, 385 S.W.2d 843, 846 (Tex. 1965); Hudson v. Hudson, 763
S.W.2d 603, 605 (Tex. App.CHouston [14th Dist.] 1989, no
writ).  However, post-divorce increases
in an individual=s retirement benefits that are attributable
to the person=s continued employment, such as raises, promotions,
services rendered, or contributions, are not subject to community
property division.  See Berry v.
Berry, 647 S.W.2d 945, 947 (Tex. 1983); Boyd v. Boyd, 67 S.W.3d 398,
408 (Tex. App.CFort Worth 2002, no pet.).  Conversely, post-divorce increases in
an employee spouse=s retirement benefits that are not
attributable to continued employment are subject to community property
division.  See Burchfield v.
Finch, 968 S.W.2d 422, 424B25 (Tex. App.CTexarkana 1998, pet denied); Phillips
v. Parrish, 814 S.W.2d 501, 505 (Tex. App.CHouston [1st Dist.] 1991, writ denied). 
With this framework in mind of how the law views retirement benefits, we
turn to the pension plan at issue here.

B.      All
of the disputed Benefits Were Earned During Marriage; None Were Earned
Post-Divorce








Maureen contends that the trial court should have recognized
the community=s apportionable
interest in all of the retirement benefits, including those that are credited
to DROP or received post-divorce.  In
support of her position, she emphasizes the following facts:  (1) Paul was fully vested in the plan in 1995
after he completed twenty years of service, (2) Paul=s monthly pension benefit was
fixed and frozen in 1995, and additional service, raises, or promotions cannot
change the basic benefit, (3) since 1995, Paul has been a Aretiree@ and his monthly pension
benefit has been, and will continue to be, credited into a DROP account until
he actually separates from service; and (4) Paul does not need to continue
working to receive benefits.  We agree.

HPOPS=s pension plan is a defined
benefit plan governed by article 6243g-4 of the Texas Revised Civil
Statutes.  See Tex. Rev. Civ. Stat. art. 6243g-4, '' 1B28.  The basic retirement benefits administered
through the pension system are set out in section 12 of article 6243g-4.  The benefits are paid to every eligible
member who separates from service[6]
after earning twenty or more years of service. 
Id. ' 12(a).  Patrick Franey,
HPOPS=s Director of Administration,
testified that the basic retirement benefit is a service-related benefit, which
is based on years of service with a twenty-year vesting period; the member=s interest in all of the above
benefits is vested upon attaining twenty years of service. 

The statutory provisions specific to DROP are located in
section 14 of article 6243g-4.  This
section provides that an active member who has at least twenty years of service
with the police department may elect to participate in DROP and receive a DROP
benefit instead of the standard pension. 
Id. ' 14(b).[7]  The election may be made Aby an active member who has
attained the required years of service.@  Id. 
Thus, in order to participate in the DROP, a member must be eligible for
retirement.








The statutory scheme expressly provides that, when a member
of the HPOPS chooses to enter the DROP, all retirement benefits are set as if
the member had actually retired and begun receiving his pension on the date the
member elected to enter the DROP.  A member
who participates in the DROP cannot accrue additional service creditCeven though he continues to
workCand any increases in pay that
occur after entry into the DROP cannot be used in computing the monthly pension
benefit.  See id. ' 14(c).  The HPOPS information booklet confirms
this.  It explains that when a member
decides to enter the DROP program, the member=s pension benefits are frozen
at the time of the election, regardless of how long the member may continue to
be employed and regardless of any future increases in pay.[8]  Franey also
confirmed this.  He testified that Paul=s interest in the pension
benefits was vested on May 10, 1995, and Paul could have elected to begin
receiving his retirement benefits immediately. 
Franey also confirmed that, once the DROP
election is made, neither pay raises nor additional years of service can be
used to increase the monthly pension amount credited to Paul=s DROP account; it can be
increased only by the annual COLAs.  








In short, since his election to participate in the DROP,
nothing that Paul has done or has failed to doCeither pre-divorce or
post-divorceCcan affect the basic retirement
benefits which were vested on May 10, 1995, and frozen on November 18,
1995.  While Paul continues to work for
the police department, the DROP election only means that Paul has deferred
receipt of retirement benefits which he earned by virtue of his work from May 10,
1975 through November 18, 1995.  The fact
that Paul is currently deferring receipt of retirement benefits while they are
credited into his DROP account does not alter the community property character
of the retirement benefits, most of which were earned by virtue of work during
the existence of the community, vested during the existence of the community,
and were frozen in value when Paul Aretired@ in November 1995, prior to the
divorce.

Therefore, we hold that Maureen is entitled to a percentage
of the community interest in all of the disputed benefits credited to Paul=s DROP account, including those
credited post-divorce.[9]  However, increases in the DROP account from
Paul=s contributions from his salary
post-divorce remain his separate property.








We likewise hold that the annual COLAs, as part of the basic
retirement benefits provided for in section 12 of article 6243g-4, were
community property.  See Tex. Rev. Civ. Stat. art. 6243g-4, ' 12(c).  Courts, including this court, have held that
increases resulting from COLAs are subject to community property division
because they are not attributable to raises, promotions, services rendered, or
contributions.  See, e.g, Burchfield v. Finch, 968 S.W.2d at 424B25; Phillips v. Parrish,
814 S.W.2d at 504B05; see also Sutherland v. Cobern, 843 S.W.2d 127, 131 (Tex. App.CTexarkana 1992, writ denied) (holding that COLAs are a means of
offsetting otherwise declining value of retirement benefits during marriage and
are, thus, community property subject to division); Taylor v. Taylor,
No. 14-98-01284-CV, 2000 WL 1125540 (Tex. App.CHouston [14th Dist.] August 10,
2000, pet. denied) (not designated for publication) (same).  

The same reasoning applies to the 13th annual payment
benefit, the monthly benefit for defraying health insurance costs, and the
one-time $5,000 lump sum payment.  As
noted above, all of these benefits are provided for in section 12 of article
6243g-4, and all of them are available to a member who retires after earning
twenty or more years of service.  See
Tex. Rev. Civ. Stat. art.
6243g-4, '' 12(b)B(e).  To be eligible to receive them, the DROP
member is not required to do anything more than work for twenty years.  The community character of these benefits is
not altered merely because they may be deferred to a DROP account or received
post-divorce.  Indeed, Paul concedes that
the $5,000 lump-sum payment is subject to division as a community asset; we see
no reason to distinguish this benefit from the others Maureen contends are
community assets to the extent they were earned during marriage.[10]

We hold that the trial court abused its discretion in ruling
and making findings of fact that the disputed benefits are Paul=s separate property.  We also hold that the portion of the trial
court=s conclusion of law number 10,
which states that AHusband is entitled to the
confirmation as his separate property . . . those pension benefits anticipated
to accrue in the future through his employment but for which Husband has not
yet received right, title, or interest@ is incorrect insofar as it
refers to the disputed benefits.








C.      Paul=s
Arguments Do Not Change the Outcome

Paul argues that the characterization of these benefits is
governed by the inception of title doctrine; it states that inception of title
occurs Awhen a party first has a right
of claim to the property by virtue of which title is finally vested.@  See Wierzchula
v. Wierzchula, 623 S.W.2d 730, 731B32 (Tex. Civ.
App.CHouston [1st Dist.] 1981, no writ).  He contends that he has overcome the
community property presumption with clear and convincing evidence of tracing
that the disputed benefits are the result of toil and funds expended at a time
when Paul was no longer married to Maureen. 
See Tarver v. Tarver, 394 S.W.2d 780, 783 (Tex. 1965) (stating
general rule that to discharge the burden imposed by the statute, a spouse must
trace and clearly identify property claimed as separate property); McKinley
v. McKinley, 496 S.W.2d 540, 543 (Tex. 1973) (same).  

Paul points to the following in support of his position: (1)
he is required to contribute monthly to the DROP account to qualify for DROP
participation; (2) by enrolling in DROP, he bargained away the valuable
consideration of his right to increase his pension benefits based on his
continued post-divorce  service; (3) his
post-divorce benefits are contributed dollar-for-dollar to the notional
account; (4) upon retirement, HPOPS will only distribute to him that amount of
post-divorce DROP benefits he actually made post-divorce; and (5) all the DROP
contributions the trial court found were separate property are contributed
post-divorce.  Paul does not explain the
significance of these factors, but merely asserts that they demonstrate that
the portion of the DROP account that accumulates post-divorce is a benefit Paul
earned when he was no longer married to Maureen.  Therefore, Paul contends, that portion of the
DROP account is his separate property. 
Additionally, Paul asserts that the testimony of Patrick Franey, HPOPS=s Director of Administration,
establishes that to treat the disputed DROP credits as community property would
be to grant Maureen benefits not contemplated under the HPOPS pension plan,
because plan administrators have never allowed these benefits to be divided by
a qualified domestic relations order. 








We do not find these arguments persuasive.  First, Paul=s argument that he must
contribute monthly to the DROP account to qualify for DROP participation is
misleading.  The pension plan merely
requires that active members of the pension system must pay into the system a portion
of their direct pay.  See Tex. Rev. Civ. Stat. art. 6243g-4, ' 8(a).  Paul has chosen to continue to work and
receive a salary; therefore, he is required to pay into the pension
system.  There is no statutory
requirement that he pay to participate in the DROP.  Moreover, Maureen does not contend that any
part of his post-divorce contribution from salary is community property. 

As for Paul=s argument that by enrolling in
the DROP he bargained away the valuable consideration of his right to increase
his pension benefits based on his continued post-divorce service, we do not see
how this impacts the only relevant inquiry, which is whether the benefits were
earned during the marriage.  Moreover,
although the parties did not develop evidence of the benefits of DROP
participation, it appears that, by choosing to enter the DROP rather than
simply retire and begin receiving pension payments, any Avaluable consideration@ Paul lost would be offset by
the benefits of accumulating credits in the DROP account toward a lump sum
payment of retirement benefits that earn interest and receive annual
cost-of-living adjustments while he continues to work and receive a
salary.  








Paul=s remaining arguments are based
on the tautology that the post-divorce DROP credits are his separate property
because they are made post-divorce.  But,
again, the mere fact that the DROP credits are made post-divorce does
not mean they are benefits that are earned post-divorce.  Paul points to no evidence that the DROP
credits and the other benefits at issue were earned by him as a result of his
continued employment, such as by raises, promotions, services rendered, or
contributions.  The assertion that Paul Amust@ work to participate in DROP is
unpersuasive and unsupported by the evidence. 
As we noted above, Paul chose to enter the DROP and continue working
instead of retiring and receiving retirement benefits immediately, and by
participating in the DROP, he receives the benefits of that participation.  Even Paul=s witness, Patrick Franey, who administers the DROP, testified that there is
no statutory provision that requires the member who has made a DROP election to
continue working after the election, and it is simply a matter of choice on the
part of the member. 

Thus, whether we apply the law specifically applicable to
retirement benefits or Paul=s inception of title theory,
the outcome remains the same.  When Paul
chose to participate in the DROP, the amounts credited to his DROP account (or
deferred until actual retirement) represented vested retirement benefitsCnot Paul=s earnings after the
termination of the community.  Paul has
failed to demonstrate, by clear and convincing evidence, that the disputed
benefits are his separate property.  

Paul advances one final argument that the disputed benefits
are separate property.  It is based on Franey=s testimony that the HPOPS
administrators do not recognize the post-divorce DROP credits and the other
disputed benefits as community property, and have never allowed these benefits
to be divided by a qualified domestic relations order.  Paul argues that the board of directors of
HPOPS is entitled to refuse to recognize the benefits as community property
subject to division because they are authorized by statute to Aestablish the policies and
procedures for disbursements from the fund it considers appropriate,@ see Tex. Rev. Civ. Stat. art. 6243g-4, ' 6(b).  Paul further suggests that Maureen=s Areal complaint@ may not lie with the trial
court but with HPOPS, which is not a party to the suit.  We disagree.








The short answer to this claim is that our state
constitution and our state legislatureCnot the HPOPS administratorsCdefine what is community
property.  And the courtsCnot the HPOPS administratorsCare the ultimate interpreters
of these definitions.  Under the Texas
Family Code, state retirement plans are subject to division upon divorce.  See Tex.
Fam. Code ' 7.003.  All of the benefits Maureen seeks are part of
the defined benefit plan administered by HPOPS, and section 28(e) of article
6243g-4 provides that accrued benefits may be divided by a qualified domestic
relations order and paid to an alternate payee in accordance with that
order.  See id. ' 28(e).  Furthermore, we have found that almost all of
the benefits were earned pre-divorce and are, therefore, community
property.  At this point, it does not
matter how the HPOPS administrators view these benefits; their interpretation
is not binding on this Court.[11]

D.      The
Taggart Apportionment Formula Applies

Having determined that the disputed benefits, to the extent
they were earned during the marriage, are community assets subject to division
upon divorce, we next turn to the proper apportionment of the assets.  Maureen argues that the apportionment formula
of Taggart v. Taggart applies to determine the extent of the community
interest in the disputed retirement benefits. 
See 552 S.W.2d 422, 423B24 (Tex. 1977).  Paul worked for the police department for
4.39 years before marriage and had worked almost 21 years when he elected to
effectively Aretire@ by entering the DROP
program.  The trial court accepted
Maureen=s expert=s calculation that the
community=s interest in the pension
benefits was 80.11%, while Paul=s separate property interest
was 19.89%.  Paul did not challenge this
calculation below or on appeal. 
Therefore, we will not disturb this part of the trial court=s ruling awarding Maureen 50% of
the community=s interest.  However, we must discuss Maureen=s contention that the disputed
benefits should be divided using the Texas Supreme Court=s Taggart apportionment
formula.  








In Taggart, an ex‑wife sued for a portion of
her ex‑husband=s retirement benefits after he
retired.  The ex-husband had 360 months
of active and retired naval service, with 246 months of those months earned
during marriage.  The Texas Supreme Court
held that the ex-wife owned as her part of the community estate a share in the
contingent right to the ex-husband=s military retirement benefits
even though that right had not matured at the time of the divorce.  Taggart, 552 S.W.2d at 423.  The Taggart court then awarded the
ex-wife one-half of 246/360 of the ex-husband=s total retirement pay.  Id. at 424.  

Later, in Berry v. Berry, the Supreme Court
reaffirmed the Taggart apportionment formula for determining the extent
of the community interest in retirement benefits, but instructed that when the
value of such benefits is in issue, the benefits are to be apportioned to the
spouses based upon the value of the community=s interest at the time of
divorce, not at the time of retirement.  See
Berry v. Berry, 647 S.W.2d 945, 947 (Tex. 1983).  In Berry, the husband did not retire
until after the divorce, and the record showed that, after the divorce, the
husband=s retirement benefits increased
as a result of twelve to fourteen pay raises and an improved benefit plan.  The Berry court determined that to
allow the wife to share in these post-divorce increases would impermissibly
invade the husband=s separate property.  Id. 

Since Berry, Texas courts have continued to apply the
Taggart formula to determine the extent of the community=s interest when the employee
spouse=s retirement is fully matured
at the time of divorce.  See Limbaugh
v. Limbaugh, 71 S.W.3d 1, 16 (Tex. App.CWaco 2002, no pet); Hudson
v. Hudson, 763 S.W.2d at 605; see also Harrell v. Harrell, 700
S.W.2d 645, 646, 648 (Tex. App.CCorpus Christi 1986, no writ)
(applying Taggart formula to determine extent of community interest in
retirement benefits); Workings v. Workings, 700 S.W.2d 251, 254 (Tex.
App.CDallas 1985, no writ)
(same).  We are therefore persuaded that
cases involving the extent, as opposed to the value, of the community interest
in retirement funds require application of the Taggart formula.  








Here, Paul and Maureen were still married when Paul elected
to participate in the DROP.  If Paul had
instead chosen to retire at that time, there would be no question that the Taggart
formula would be applicable, because there could be no post-divorce labors that
could increase the value of the retirement benefits.  Because all of the benefits were vested at the
time Paul entered the DROP, and because he is considered Aretired@ for purposes of determining
his benefits under the DROP, Paul is likewise effectively retired for purposes
of characterizing the retirement benefits. 
There is no danger that any post-divorce labors will increase the
retirement benefits to implicate the application of the Berry valuation
formula.  We therefore hold that this
situation is more analogous to Taggart than Berry, and thus the Taggart
apportionment formula is applicable.  See
Shanks v. Treadway, 110 S.W.3d 444, 446 n.3 (Tex.
2003) (recognizing that serious concerns have been raised regarding the Berry
formula=s failure to account for
post-divorce increases in the value of retirement benefits attributable to
community property contributions to the plan).[12]

E.      This
was Not a Just and Right Property Division

Having determined that the evidence was legally and factually
insufficient to support the trial court=s characterization of the disputed
DROP benefits as separate property and the proper method of apportionment, we
must now consider whether the trial court=s mischaracterization caused it to
abuse its discretion in making its property division. 

As noted above, we must remand the entire community estate
for a new division when we find reversible error that materially affects the
trial court=s Ajust and right@ division of the property.  See Jacobs, 687 S.W.2d at
732.  If, on the other hand, the
mischaracterization of the property had only a de minimis
effect on the trial court=s just and right division, then the trial court did not abuse
its discretion.  See Robles v. Robles,
965 S.W.2d 605, 621 (Tex. App.CHouston [1st Dist.] 1998, pet. denied).  When the court mistakenly characterizes property
that constitutes the main asset of the parties, the error is of such a
magnitude that it materially affects the just and right division of the
community estate.  See In re Marriage
of Taylor, 992 S.W.2d 616, 621 (Tex. App.CTexarkana 1999, no pet.).








We conclude that the trial court=s error in mischaracterizing the five
disputed benefits as Paul=s separate property had more than a de minimis
effect on the trial court=s just and right division. 
The net value of the community interest as determined by the trial courtCwithout the mischaracterized benefitsCwas $478,631.  The exact value of the post-divorce DROP
credits, the largest of the mischaracterized benefits, is necessarily
indeterminate because it depends on the length of time Paul chooses to continue
participating in the DROP program, as well as other factors such as the
accumulation of interest and annual COLAs. 
However, Maureen=s expert testified that Paul=s separate property interest in the
DROP, pre-divorce, was approximately $28,000 out of a total value of over
$259,000.  Maureen also points out that,
based on the current monthly pension benefit credit (without computing
increases due to annual COLAs and interest earned on the balance), the
community is deprived of no less than $20,927 for every year that Paul
continues to defer his actual retirement.[13]  There was also testimony from Maureen=s expert that the present value of
this asset was $442,303.  In
addition to the community=s loss of the post-divorce monthly credits to the DROP
account, COLAs, and earned interest, there was evidence that the community=s 80.11% interest in the medical
stipend, the 13th annual payment, and the $5,000 one-time lump sum payment was
valued at $36,321. 

Thus, Maureen has been deprived of any portion of the 80.11%
community interest in these benefits, and the degree of harm increases for
every year that Paul continues to defer his retirement and the monthly benefits
are credited into his DROP account.  Therefore,
the loss to the community of an 80.11% community interest in the five
mischaracterized benefits materially affects the equitable division made by the
trial court and warrants remand to the trial court for a new division.  To find otherwise would result in a division
of property that is neither just nor right. 
The trial court=s conclusion of law that the property division is just and
right irrespective of the characterization of any item of property as community
or separate is erroneous as a matter of law. 









We therefore sustain Maureen=s first and second issues.  Because of our resolution of theses issues,
it is unnecessary for us to reach Maureen=s third issue, that the trial court
erred in failing to make findings of fact and conclusions of law regarding the
values of the disputed retirement benefits.

CONCLUSION

In summary, we find that the trial court abused its discretion
in finding that the post-divorce DROP credits and the other disputed benefits
were Paul=s separate property.  All of these benefits, to the extent they
were earned during the marriage, were community property and subject to
division.  However, increases in the DROP
account from Paul=s contributions from his current salary remain his separate
property, which Maureen does not challenge. 
Finally, designating these retirement benefits as separate, rather than
community, materially affected the property division, making it manifestly
unfair and unjust.

For these reasons, the trial court=s judgment is reversed and remanded
for further proceedings in accordance with this opinion.

 

 

 

 

/s/        Wanda McKee Fowler

Justice

 

 

 

Judgment rendered
and Opinion filed January 20, 2004.

Panel consists of
Justices Fowler and Edelman.  Former
Chief Justice Scott Brister not participating.

 

 











[1]  The retirement
plan makes available a A13th annual payment@ in an amount equal to Athe last monthly payment received by
the retiree or survivor before issuance of the payment,@ when the plan meets certain financial
criteria. 
See Tex. Rev. Civ. Stat.
art. 6243g-4, ' 12(e).  





[2]  The retirement
plan includes a provision for a monthly payment of a specified amount that is
intended to defray the retired member=s group
medical insurance costs.  See Tex. Rev. Civ. Stat. art. 6243g-4, ' 12(d). 





[3]  The retirement
benefits include a Aone‑time lump‑sum payment of $5,000 at the
same time the first monthly pension payment is made@ for eligible members. 
See Tex. Rev. Civ. Stat. art.
6243g-4, ' 12(b). 





[4]  Maureen makes no claim that the
community has any interest in the contribution deducted from Paul=s salary that is placed into the DROP
account post-divorce. 





[5]  Maureen has a
third issue that we do not reach because of our resolution of the first two
issues.





[6]  ASeparation from service@ is
defined as Acessation of work for the police department of a city
subject to this article, whether caused by death, discharge, resignation, or
transfer to an unclassified position.@  Tex.
Rev. Civ. Stat. art. 6243g-4, ' 2(20).





[7]  The ADROP benefit@ is defined as Athe total amount credited to a member=s notional DROP account, payable as
described by this section, plus a monthly retirement pension.@ 
See id. ' 14(a). 





[8]  The HPOPS
booklet explains how DROP works as follows:

 

The DROP decision enables the member to receive a >reduced= annuity
and a lump sum distribution at the time the member terminates employment as a
classified police officer with the City of Houston Police Department.  A >reduced
annuity= means that the member=s
pension benefit is frozen at the time DROP is elected . . . The member=s monthly benefit is frozen as of his/her DROP
entrance date, regardless of how long he/she continues to be employed as a
classified police officer of the City of Houston Police Department.  Following the DROP election, the member does
not accrue additional service credit. 
Increases in pay that occur on or after the effective date of the DROP
election may not be used in computing the member=s monthly service pension.  However, a member=s monthly DROP benefit does receive cost of living
adjustments that occur on or after the DROP date that would be applicable to
pension payments.

 

(emphasis in original).





[9]  Although this issue appears to be one
of first impression in Texas, our conclusion is shared by at least one other
state court.  In Bailey v. Bailey,
708 So. 2d 354 (La. 1998), the Louisiana Supreme Court held that the trial
court erred in characterizing post-divorce DROP credits in the Louisiana State
Employee=s Retirement System (LASERS) as the
husband=s separate property.  See id.at 358B59. 
There, as here, the husband was married when he entered the DROP
program, and continued to be married during part, but not all, of his
participation in the program.  In reaching
its conclusion that all of the funds credited into the husband=s DROP account were apportionable between the community and separate estates,
the court reasoned:

 

If Mr. Bailey had actually retired on
the date he entered the DROP program, Mrs. Bailey clearly would have had the
right to share, in the stipulated percentage, in the retirement benefits he
would have received.  The fact that the
same amount of monthly retirement benefits was credited to a deferred-receipt
account under a fictitious retirement for a specific temporary period should
not change that result.

. . .

But just as Mrs. Bailey is entitled to
her Sims formula percentage of Mr. Bailey=s base benefits he will receive upon
retirement, she also is entitled to the same percentage of his DROP account,
inasmuch as both the base retirement benefits and the funds in the DROP account
are attributable to Mr. Bailey=s employment and retirement
contributions prior to the termination of the community.

 

Id. at 358.  Although
some aspects of the LASERS DROP program differ from the HPOPS DROP program,
most notably that a member may not participate in DROP for more than three
years, see id. at 356, the similarities of the plans render the Bailey
court=s reasoning persuasive.





[10]  At oral
argument, Paul explained that he conceded that the $5,000 lump-sum payment is
not entirely his separate property because the only requirement to receive it
is that the member have worked at least twenty years.  However, this seems to be a distinction
without a difference, because that appears to be the only requirement to be
eligible to participate in the DROP as well. 
See Tex. Rev. Civ. Stat. art.
6243g-4, ' 14(b) (AAn
active member who has at least 20 years of service with the police department
may file with the pension system an irrevocable election to participate in DROP
and receive a DROP benefit instead of the standard form of pension provided by
this article.@).  Nor do we
think it is significant that section 14 does not mention the payment, because
the statutory scheme specifically provides that the payment is made upon
separation from service and at the same time the first monthly pension payment
is made; thus, it is unnecessary to Apark@ the payment in a DROP account.  See id. ' 12(b). 





[11]  Although
neither party addresses this in their briefs, it appears from our review of the
record that the HPOPS administrators reject the disputed benefits on the basis
of Government Code section 804.003(g)(7), which provides that a public
retirement system may reject a domestic relations order as a qualified domestic
relations order unless the order Adoes not
purport to award any future benefit increases that are provided or required by
the legislature.@  See Tex. Gov=t Code ' 803.003(g)(7). 
They apparently take the position that the disputed benefits are Afuture benefit increases,@ and, therefore, they have the discretion to refuse to
qualify an order dividing them.  We do
not address this position. 





[12]  We further note that, although Maureen
is entitled to her percentage of the community interest in the DROP, she is not
entitled to actually receive the payments until Paul retires or otherwise
separates from service.  At that time,
the balance of the DROP account (less Paul=s separate contributions from his
salary post-divorce and any earnings thereon) can be divided and distributed in
accordance with HPOPS= procedures.  





[13]  This amount is
determined by multiplying the current monthly pension amount of $2,177 by
twelve for a total of $26,124 per year, and then multiplying $26,124 by the
community=s 80.11% interest for a total of $20,927.